(No. 42602.—

*In re* FRANK A. ANGLIN, JR., Attorney, Respondent.

*Opinion filed September 22, 1970.*

JOHN CADWALADER MENK, of Chicago, *amicus curiae*.

HOWARD T. SAVAGE, of Chicago, for respondent.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

After conducting hearings on a complaint which charged the respondent, Frank A. Anglin, Jr., with professional misconduct, the Committee on Grievances of The Chicago Bar Association, sitting as Commissioners of this court, found

the respondent guilty of misconduct and recommended that he be suspended from the practice of law for a period of five years. The Board of Managers of The Chicago Bar Association overruled the respondent's objections to the report of the Committee, approved the report and recommended that the respondent be suspended from the practice of law for five years and until further order of the court. On this review of the proceedings before the Commissioners, the respondent urges that the recommended period of suspension is excessive and not necessary to protect the public or to insure that the respondent's future conduct as a lawyer will be honorable. The respondent further asks that the matter be referred back to the Commissioners to take evidence as to his past and present moral character and fitness.

The respondent was admitted to the practice of law on June 4, 1952. The charges against him relate to a transaction which he had with the complainant, Mrs. Gwendolyn Evans. She had obtained a divorce, and by way of settlement in the divorce proceeding certain real estate had come to her. By the terms of the settlement the property was to be sold and one-half of the proceeds was to go to Mrs. Evans and the other half was to be used to purchase United States Savings Bonds for the benefit of her three children. A real-estate broker whom she contacted arranged for the respondent to handle the sale of the property, which was sold in August of 1964. At the respondent's suggestion, $8210 was deposited in a savings and loan association. The respondent had instructed Mrs. Evans that after six weeks she should withdraw the funds from the savings and loan association and go to the Federal Reserve Bank and buy government bonds. The Federal Reserve Bank, however, refused to issue bonds in her name because the check which she presented in payment indicated a trust for her children. She then talked to the respondent and endorsed the check to him so that he could purchase bonds.

Mrs. Evans testified that thereafter she repeatedly tried to contact the respondent but was unable to do so until early in 1966. On April 1, 1965, she complained to the Chicago Bar Association. In a letter to the Association's Committee on Inquiry dated July 12, 1965, the respondent stated, "no doubt I promised Mrs. Evans to either purchase the bonds to which she referred or to negotiate for her the check deposited here." The respondent did not do either. Instead he negotiated the check and put the proceeds into a personal business venture. Thereafter, on November 2, 1965, the respondent wrote the following letter to Archibald J. Carey, Jr., a member of the Association's Committee on Inquiry:

"Dear Mr. Carey:

Enclosed is Purchaser's receipt on the Drexel National Bank for Cashier's check No. A 153292 dated August 3, 1965, in the amount of Eight Thousand Two Hundred Ten ($8,210.00) Dollars drawn to the order of Mrs. Gwendolyn Evans by the undersigned.

When I discussed this matter with you I did report that I had talked with Mrs. Evans and she had no further complaint. Although Mrs. Evans did not call me after the last letter from the Chicago Bar Association, I did call her and we made further arrangements satisfactory to her for the purchase of savings bond [*sic*] to which she referred in her complaint.

Sincerely,

(S)    Frank A. Anglin, Jr."

As a result of this letter the Inquiry Committee closed its file. The cashier's check, however, was never turned over to Mrs. Evans. Her name was endorsed upon it by the respondent, and the proceeds of the check were deposited in the bank account of the law office with which the respondent was associated.

In March of 1966, Mrs. Evans went to the office of the

respondent and there met with the respondent and his associate, William C. Starke, a lawyer. The respondent explained that her money had been invested in a project which had not been successful, and he promised to repay the amount due her before the end of the year. At that time she received $500, and thereafter on several occasions Starke turned over additional sums of money to her. By August of 1967, $2100 had been paid to her. She then consulted another lawyer, who discussed the matter with the respondent and William C. Starke. As a result of those discussions, a promissory note in the principal sum of $8,090.90 was executed by the respondent and Starke. The payments called for by this note were not made in accordance with its terms, and complaint was again made to The Chicago Bar Association.

In his testimony, as in his answer to the complaint, the respondent admitted that he had commingled the funds received from Mrs. Evans and used them to finance personal ventures as charged in the first count of the complaint filed against him. He also testified that after his letter of July 12, 1965, was written to the Committee on Inquiry, Mrs. Evans agreed that he should invest the sum of $8210 as he saw fit, pay her 6% interest, and keep the money available for her.

Upon this evidence the Commissioners found that the respondent's conduct constituted a conversion of funds entrusted to him by a client and involved moral turpitude. The Commissioners also found: "After complaint to The Chicago Bar Association respondent made false representations to the Committee on Inquiry leading said Committee to believe he had returned the funds to Gwendolyn Evans, which was done by letter and by a check payable to Gwendolyn Evans falsely endorsed by Respondent, when no return of funds had in fact been made; that his intention was to deceive the Committee on Inquiry as charged in Count II of the Complaint."

On September 13, 1968, after the hearings before the

Committee on Grievances were concluded, Mrs. Evans acknowledged that she had received payment of the sum of $8210 together with interest in the sum of $1985.

In his brief in this court the respondent again admits, as he has consistently done throughout these proceedings, that he improperly commingled and improperly used the funds of Mrs. Evans. Based upon his own testimony, however, he argues that in August of 1965 Mrs. Evans stated to him that "she was not concerned about the funds as long as she knew they were available, and that she did not want savings bonds, and that she had said she would be pleased to have the money invested in the restaurant business or in mortgages or in whatever as long as money would be available for the needs that she might have."

On the basis of this testimony he argues that the deceit involved in his letter of November 2, 1965, to Archibald J. Carey, Jr. was "without moral turpitude—it was for the sole purpose of ending the proceedings before the Bar Association where the client and lawyer had reached a satisfactory and mutual agreement." Like the Commissioners, we are unable to accept this contention. It is based solely upon the testimony of the respondent. Mrs. Evans did not testify to any such agreement, and no effort was made by the respondent to question her about it. Moreover, in his letter of November 2, 1965, the respondent did not mention the kind of agreement described in his brief, but rather advised the Committee on Inquiry that "we made further arrangements satisfactory to her for the purchase of saving bond [*sic*] to which she referred in her complaint."

Upon this record we are unable to concur in the respondent's suggestion that the discipline recommended by the Committee on Grievances—suspension from the practice of law for a period of five years—is excessive. We are of the opinion, however, that the modification in that recommendation made by the Board of Managers—that the suspension continue until the further order of the court—

is not warranted by anything in the record. We are also unable to concur in the respondent's suggestion that the matter be referred back to the Commissioners to receive evidence as to his character and reputation. The record shows that the respondent was admitted to practice in 1952, and that he represented numerous clients without complaint. Except for the matter involved in this complaint, it is not suggested that his conduct as a lawyer has been other than in conformity with the standards of the profession.

The respondent is suspended from the practice of law for a period of five years.

*Respondent suspended.*