(No. 64774

*In re* WILLIAM KENNER HARRIS, Attorney,
Respondent.

*Opinion filed September 21, 1987.*

CUNNINGHAM, J., took no part.

William F. Moran III, of Springfield, for the Administrator of the Attorney Registration and Disciplinary Commission.

William Kenner Harris, of Macomb, *pro se.*

JUSTICE SIMON delivered the opinion of the court:

We are confronted in this instance with the case of the officious intermeddler.

William Harris, the respondent, practices in Macomb, and he was retained on May 12, 1979, by Mary Sullivan and Harold Adkins. Grace Sapienza, the sister of Sullivan and Adkins, had died intestate in Michigan, and the respondent was retained to establish his clients' heirship and rights to a portion of the residue of Sapienza's estate. The entire residue amounted to $4,763.84, of which

some $500 to $600 might go to each of the respondent's two clients. In 1978, that residue had been assigned to the State of Michigan by escheat. The respondent contends that he took on the representation after being informed by his clients that they had met no success in their attempts to retain other attorneys. According to the respondent, he told his prospective clients that he would require a very long time to do the work, to which they purportedly replied that the respondent could proceed at his own pace and take all the time he desired. An agreement was struck to compensate the respondent with a 20% contingent fee of the amount recovered by Sullivan and Adkins (*i.e.*, a total possible fee of $200 to $240), all expenses and costs to be advanced by the respondent.

In September 1981, charges were filed with the Attorney Registration and Disciplinary Commission (ARDC) against the respondent by Priscilla Hutchins, a resident of Chehalis, Washington, and niece of Sapienza. Hutchins' charges, which do not appear in the record, complained that the respondent had failed to answer her letters and telephone calls, that he had failed to answer correspondence from the Michigan Attorney General's office, and generally that the respondent had done nothing in this case. The respondent replied to Hutchins' charges denying that he had received any written correspondence from her and asserting that he had "assembled considerable information as to the heirship of Grace Sapienza" and hoped to conclude the matter "as soon as possible." In June 1982, the respondent wrote to the ARDC that he was "continuing to work" on the case. He notified the ARDC that: "It does not appear that there is much money in the estate and it is necessary for me to make out-of-pocket advances in order to obtain the necessary documents. I hope to be able to conclude

the matter this summer and am working diligently toward that end."

A year later the respondent informed the ARDC that he would need at least three more months to complete the matter. Fourteen months later he informed the ARDC that he hoped to have it concluded in one more month. Three months after that letter, in December 1984, the respondent wrote that he was "securing documentation in the form of birth certificates, death certificates and affidavits to establish the relationship of the presumptive heirs to decedent and to exclude the existence of other persons with equal or closer degrees of kinship. *** I expect to secure the necessary birth certificates, death certificates, and affidavits within the near future and will provide you a current report one (1) month from the date of this letter." Three days after receipt of the last letter, the inquiry board voted a complaint.

In count I, the Administrator of the ARDC alleged that respondent's conduct in failing to take action on his retainer constituted: (i) conduct prejudicial to the administration of justice in violation of Disciplinary Rule 1—102(a)(5) of the Code of Professional Responsibility (107 Ill. 2d R. 1—101 *et seq.*); (ii) neglect of a legal matter in violation of Rule 6—101(a)(3); (iii) "failing to be punctual in fulfilling all professional commitments" in violation of Rule 7—101(a)(1)(B); (iv) failure to perform a contract for professional services in violation of Rule 7—101(a)(2); (v) damaging a client in violation of Rule 7—101(a)(3); and (vi) conduct tending to bring the legal profession into disrepute. In a second count, the Administrator alleged that respondent made false statements in his letters to the Administrator when the respondent asserted that he was pursuing the Sapienza matter and would conclude the matter in short order, and that those false assertions constituted: (i) conduct involving dishonesty or misrepre-

sentation in violation of Rule 1—102(a)(4); (ii) conduct prejudicial to the administration of justice in violation of Rule 1—102(a)(5); (iii) making a false statement in violation of Rule 7—102(a)(5); and (iv) conduct tending to bring the profession into disrepute.

When the Hearing Board convened, the respondent failed to appear. Contacted by telephone, he informed the Board that he was preparing for a jury trial and had two days earlier mailed a motion to continue his hearing. In that conversation the respondent admitted all facts in the Administrator's complaint, saying that the Hearing Board had all the facts before it and "might as well decide." The Board did. On count I, the Board found every infraction alleged, except that the respondent had damaged his clients in violation of Rule 7—101(a)(3); on count II, the Board found a violation of Rule 1—102(a)(4) and action tending to bring the courts and legal profession into disrepute. The Hearing Board recommended that respondent be suspended from the practice of law for 90 days.

The respondent filed exceptions with the Review Board, attaching affidavits from both of his clients. Each client corroborated the respondent's assertion that in entering into the contract for legal services it was agreed and understood that the respondent would take a long time to bring the matter to a close. Furthermore, Sullivan and Adkins each swore under oath "that William K. Harris has always been entirely honest and forthright in his dealings *** and that his professional reputation as a lawyer is of the highest degree." They both acknowledged that they were satisfied with the respondents legal services in regard to the Sapienza estate, stated their wishes that the respondent continue to represent them in that matter, and concluded that if they had any need for legal representation in the future they would retain the respondent and would also recommend him to

others. Notwithstanding his clients' obvious regard for the respondent's abilities and conduct, the Review Board adopted the conclusions of the Hearing Board and concurred in recommending suspension for 90 days.

Addressing ourselves to count I of the Administrator's complaint, regarding the respondent's supposed neglect, we are immediately confronted with an inconsistency in the complaint. The Administrator has charged violations of Disciplinary Rules 6—101(a)(3) and 7—101(a)(1)(B). The former states: "A lawyer shall not *** neglect a legal matter entrusted to him." (107 Ill. 2d R. 6—101(a)(3).) Conversely, the latter rule says that lawyers should not, in the course of rendering zealous representation, advocate their clients' interests through such unreasonable conduct as "engaging in offensive tactics," "refusing to accede to reasonable requests" and (the charge in this case) "failing to be punctual." (107 Ill. 2d R. 7—101(a)(1).) On the one hand, then, the respondent's conduct in this matter is allegedly neglectful of his clients, while on the other hand it is allegedly overly zealous representation through the use of dilatory tactics. Given the tenor of the Administrator's arguments, we do not think he means to suggest that the respondent has been unreasonably forceful in advancing his clients' interests, and there are no grounds for finding a violation of Rule 7—101(a)(1)(B).

Neither does the record support a charge of failure to carry out a contract of employment for the rendition of legal services, in violation of Rule 7—101(a)(2). The only evidence as to the content of respondent's contract is found in his clients' affidavits, where they state that the respondent's unhurried approach to the Sapienza matter was contemplated in their contract. Furthermore, the Administrator has made no attempt to discover the contents of the respondent's agreement with his clients in order to prove his allegation, so any charge that the re-

spondent has not performed as the parties agreed is only a shot in the dark. Now that the respondent, through his clients' affidavits, has acquitted the Administrator's duty of producing some evidence (*In re Enstrom* (1984), 104 Ill. 2d 410, 416), it appears that the Administrator's shot was wide of the mark.

We are left, then, with an unusual case in which there is a charge of neglect without any showing of prejudice to respondent's clients or any complaint by those clients. Disciplinary Rule 6—101(a)(3), prohibiting lawyers from neglecting legal matters entrusted to them, is motivated by fears of prejudicing clients' interests, causing clients needless anxiety and frustration, reducing public confidence in the legal profession and interfering with the administration of justice. (Model Rules of Professional Conduct Rule 1.3 comment (1984).) Those concerns are not implicated by the respondent's conduct in this case: the Hearing Board found no prejudice to the interests of Sullivan and Adkins, the clients are apparently content and there is no showing that respondent's languid representation has derailed or complicated the administration of justice in Macomb County, Michigan.

Additionally, Sullivan's and Adkins' difficulty in obtaining counsel indicates that potential fees to be garnered from a favorable distribution of the Sapienza estate did not justify the work and risk involved, except perhaps under the conditions of respondent's contract. We do not deprecate the virtues of speed, but given the choice between dispatch without legal representation and legal representation without dispatch, the clients' choice is easily understood and should not be usurped in the name of maintaining ethical standards at the cost of depriving these clients of legal counsel. That Sapienza's officious niece was dissatisfied with the lawyer her relatives chose to retain is a matter of the utmost

indifference to this court, as it should have been to the Administrator.

Without evidence that respondent's delay has prolonged this matter beyond the bounds allowed by his clients and permitted by Michigan law, we do not believe that the unique facts in this case establish a violation of Canon 6. Had the Administrator bothered to interview respondent's clients, he might have found evidence that the clients had been misled or actually prejudiced. Alternatively, the Administrator might have satisfied himself that no disciplinary action was warranted. We have to wonder, therefore, why the clients' views were never sought. Moreover, as this court has noted, if the court were to create a duty to nonclients it would "clearly create conflict-of-interest situations." (*Pelham v. Griesheimer* (1982), 92 Ill. 2d 1, 23 (finding that an attorney that represents one spouse in a dissolution proceeding owes no duty to the children of the litigants).) Because Hutchins might have claims to the Sapienza estate that conflict with those of respondent's clients, the Administrator's failure to investigate these charges by interviewing Sullivan and Adkins is even more puzzling. Confounding delay with neglect, the Administrator has failed to establish a violation of any disciplinary rules in count I of his complaint.

Regarding count II, in which the Administrator claims to have been misled by the respondent's repeated assurances that the matter was being pursued and on the brink of success, we find no evidence of wrongdoing. The Administrator does not claim that respondent made deceptive statements of past events, but that respondent's stated expectations did not come true. There has been no showing of deceptive intent, however, and the letters are clearly puffed expectations that should have been understood as such. Also, the letterhead of respondent's stationery discloses that his two partners in

the law firm of Harris and Harris, William R. Harris and Edwin L. Harris, apparently died during the representation of these clients. Doubtless those deaths have affected the respondent personally and have likely increased respondent's work load as the sole remaining lawyer in the firm. That factor should not have been ignored.

We question, therefore, whether respondent's conduct in making those communications can be accurately described as deceptive. As the Administrator urges count II only as a factor in aggravation of the allegations of count I (see *In re Anglin* (1970), 46 Ill. 2d 261) already rejected in this opinion, we need not answer this question. It is the order of this court that the complaint be dismissed.

*Complaint dismissed.*

JUSTICE CUNNINGHAM took no part in the consideration or decision of this case.