(No. 55674.—

*In re* GEORGE LOUIS HESSBERGER, Petitioner.

*Opinion filed June 9, 1983.*

William M. Doty, Jr., of Chicago, for appellant.

Charles S. Morgan, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

JUSTICE WARD delivered the opinion of the court:

George Louis Hessberger, who was admitted to the bar of Illinois in 1972, has applied for restoration to active status under provisions of our Rule 759 (87 Ill. 2d R. 759). This court, on March 20, 1975, ordered the petitioner transferred to an inactive status pursuant to Rule 757 (58 Ill. 2d R. 757). That rule provides that an attorney will be transferred to inactive status until the further order of court if, because of a mental condition, he has been judicially declared to be a person under legal disability or in need of mental treatment or has been involuntarily committed to a hospital on such grounds.

The record shows that in June 1974 the petitioner killed his wife and that on January 30, 1975, he was found not guilty of murder by reason of insanity in the circuit court of Cook County. On the same day he was ordered hospitalized and was placed in the custody of the Department of Mental Health.

On April 18, 1975, Hessberger was released from in-patient custody. On June 9, 1975, he petitioned this court under Rule 759 for restoration to active status and submitted an affidavit of Dr. Jan Fawcett, which stated that Hessberger was under his care and that his mental disorder was under control. He was able, in Dr. Fawcett's judgment, to resume the active practice of law. On June 23,

1975, the Administrator of the Attorney Registration and Disciplinary Commission filed objections and moved to dismiss the petition. On June 30, 1975, this court denied the petition for restoration, but on September 26, 1975, on Hessberger's motion, the court vacated the order of June 30 and referred the petition to the Commission under Rule 759.

On November 14, 1975, the parties stipulated that Hessberger would be examined by a physician selected by the Illinois Medical Society. The physician selected was Ronald Shlensky, a specialist in neurology and psychiatry. On March 10, 1976, Dr. Shlensky reported that he had examined the attorney and that he had been given various psychological examinations. Dr. Shlensky stated that he did not observe any manifestations of active mental illness or anything which would interfere with Hessberger's practice of law. Dr. Fawcett also submitted an affidavit stating that the mental disorder was being adequately controlled and would not interfere with the ability to participate in the active practice of law with the attorney's former degree of skill. In May 1976, a hearing panel of the Attorney Registration and Disciplinary Commission recommended his conditional reinstatement to active status. The Review Board of the Commission in August of 1976 remanded the matter to have the hearing panel consider whether Hessberger's disability was likely to recur, and, further, what would be required to insure a nonrecurrence. No action was taken upon the remand until October 1979, when a second hearing was held.

Three witnesses testified at the second hearing. Hessberger was the first witness, and he acknowledged that on June 24, 1974, he had killed his wife, Marie Hessberger. He stated that the Illinois Department of Mental Health had remanded him to the custody of his treating physician, Dr. Fawcett. He testified that for the last year and a half he had been employed as a manager of a Salvation Army

retail store. The second witness was Dr. Fawcett, Hessberger's treating psychiatrist, who is chairman of the Department of Psychiatry at Rush Presbyterian – St. Luke's Center and a professor of psychiatry at Rush Medical College. Fawcett's opinion that Hessberger was able to return to practice was, in part, based on his demonstrated ability to hold a job and the strong support he was receiving from his new wife, who was aware of his history.

Petitioner had been examined by two other psychiatrists: Dr. Shlensky, as stated, and Dr. Kiran Frey. The parties stipulated that Dr. Shlensky was in California and was not available to testify. His report is part of the record. Although the Administrator of the Commission chose not to ask Dr. Frey to be a witness, she was called to testify by the Hearing Board. Her opinion was that Hessberger was able to resume the practice of law.

On February 29, 1980, Hessberger's conditional reinstatement was again recommended by the hearing panel. The Review Board, in June 1981, agreed in essence with the panel and recommended that the attorney be reinstated upon the condition that he follow a program of supervision to be recommended by the Administrator of the Commission and approved by this court. Three members of the Board, however, recommended that the petitioner not be restored to active status. Two of these filed a minority report and recommendation that the attorney be permitted to be employed, without reinstatement, by a law firm as a paralegal. The two dissenters specified that the firm must have the facilities for managing and supervising the petitioner's work. Under the minority report, the decision on the question of restoration to active status would be deferred pending completion of a trial period of employment as a paralegal.

The hearing panel in its report of February 29, 1980, stated that a control program should be devised to attempt to insure that the attorney will take his medication on a

regular basis and that unless such a program could be devised the panel could not recommend that he be reinstated. The panel suggested that the program provide a control by an outside third person to insure that the attorney would take his medication on a regular basis. The program should include a daily visit to the third person, who would assure the administration of the medication.

Some of the members of the Review Board would reinstate the attorney, subject to the filing of monthly reports from Dr. Fawcett or another similarly qualified specialist, stating that the attorney was examined no less frequently than monthly, that the examination showed that medication is being taken regularly, and that there was no display of emotional imbalance or psychotic tendencies. If the physician's report would indicate that he has not been following his medication schedule, has suffered a relapse, has not subjected himself for examination, or that a report has not been submitted within 10 days after requested by the Administrator, the reinstatement would be deemed revoked upon the filing of a petition with the court. These members of the Review Board would have the order remain in effect for five years, and then the petitioner's reinstatement would become unconditional.

Other members of the Review Board voting for conditional reinstatement suggest a general recommendation, leaving the details of the supervision to the Administrator. They would recommend reinstatement conditioned upon the attorney's continuing with appropriate medical treatment under the Administrator's supervision. Reinstatement would become effective upon this court's approval of the supervisory program decided upon and would continue as long as he follows the program or is able to show by clear and convincing evidence that the program is no longer necessary.

The petitioner has been diagnosed as manic-depressive of the circular type. Since he killed his wife he has been

under the psychiatric care of Dr. Fawcett. He is required to take lithium and moban daily. The petitioner has not always faithfully taken his medication. Twice in 1977 he failed to do so and as a consequence became manic and hospitalization was required. He says that he is now acutely aware of the consequences of failing to adhere to his medication schedule and that there will be no further lapses on his part. He has remarried, and he notes that this has given added stability to his life.

Dr. Fawcett's testimony was that Hessberger's condition would permit the practice of law. Dr. Fawcett stated that if he follows his medication schedule the likelihood of his again becoming manic is slight. The physician said there is no permanent cure for the lawyer's condition and that he is in need of continuing treatment. He testified that if Hessberger failed to take his medication he would be more likely to suffer a recurrence of the manic-depressive condition, which could carry with it the danger of homicidal or suicidal conduct. Dr. Kiran Frey testified that the likelihood of a recurrence of his manic-depressive moods is unlikely, provided that the petitioner continues on the medication program. Dr. Frey testified that there can be no guarantee that the condition will not recur and that if the petitioner fails to take his medication, the chances of manic depression and of violent conduct will be higher.

The petitioner has had a number of employments with moderate responsibilities since his transfer to inactive status. His condition has apparently required him to quit at least two of these positions.

This court allowed the Administrator's motion for leave to file exceptions to the report and recommendation of the Review Board. In the brief filed by the Administrator, he asks that the petition for reinstatement be denied.

Citing *In re Bourgeois* (1962), 25 Ill. 2d 47, the Administrator contends that an attorney who, at a time when he is mentally disturbed, is guilty of conduct which brings the

bar into disrepute has the burden of proving that he has been rehabilitated, that his mental disorder has been cured and is not likely to recur, and that he is fit to practice law. The petitioner here, the Administrator says, has not overcome the mental disorder. It is not a curable disorder and is one requiring continuing medication. There is no assurance he will not again fail to take his medication faithfully, and if he does not, his conduct could be homicidal or suicidal.

Hessberger contends that the standard for reinstatement is not that the attorney is no longer in need of treatment but rather that he has regained mental competence and, in particular, competence to practice law. The expert medical testimony presented was to the effect that he was competent to practice law and that this competence is not adversely affected by the necessity of his taking medication on a continuing basis. The petitioner cites *Hyland v. State Bar* (1963), 59 Cal. 2d 765, 382 P.2d 369, 31 Cal. Rptr. 329, where, Hessberger says, the focus was properly on the question of mental competence and not on the question of a cure that will be permanent. In *Hyland* the court said that an attorney who, because of mental incompetency, has been placed in an inactive status should be reinstated as an active member of the bar upon the determination that his mental competence has been restored.

The petitioner says that in *In re Bourgeois* (1962), 25 Ill. 2d 47, the court in essence imposed the burden upon an attorney who was placed on an inactive status to show that the mental disorder has been overcome and is not likely to recur and, second, that the attorney is a fit person to practice law. The petitioner says that the evidence he presented satisfied this burden of proof. He says that the hearing panel and Review Board of the Commission are the bodies that this court has designated to consider evidence. Hearing panels of the Commission, he notes, have recommended that he be reinstated on condition and that

the Review Board has filed a report and recommendation that the petitioner be restored to active status on the condition that he follow a program of supervision to be recommended by the Administrator and approved by this court. Hessberger says that the findings are not contrary to the manifest weight of the evidence.

The medical witnesses who examined the attorney were unanimously of the opinion that he is mentally capable of resuming the practice of law. This question is, in important part, a question within a discipline other than ours, and the uncontradicted testimony on the question of well-qualified witnesses in the field of psychiatry must be given great respect. The attorneys serving on hearing panels and on the Review Board have accepted the medical testimony as credible. The attorneys who have heard the testimony of the petitioner and observed him have concluded, with reservations, that he should be permitted to resume practice. The medical witnesses, the hearing panel and the Review Board state emphatically, and certainly reasonably, that action must be taken to insure that the petitioner will follow his schedule for medication.

Though we cannot at this time allow the petition for restoration to active status, the petition should not be denied. Convincing evidence was presented that if the medication schedule is faithfully adhered to, the condition from which the petitioner suffers should remain under control and relapse would be unlikely. Too, it is not inappropriate to observe that the petitioner, if he were on active status as an attorney, would not appear to present any greater physical danger to the public or to himself than the petitioner would as an attorney on inactive status. We consider, though, that a program should be established to attempt to insure that there will be no recurrence of mental disorder.

Accordingly, we direct that the Administrator communicate with Dr. Jan Fawcett with a view to their preparing a

program which will reasonably insure that the petitioner will follow his medication schedule. It should include periodic medical examinations, at reasonably frequent intervals, to insure that the petitioner has not suffered any recurrence of mental disorder or developed any new condition which would disable him from the active practice of law. The program should provide for periodic medical reports to be submitted to the Administrator. Should Dr. Fawcett be unable to participate in preparing or in carrying out such program, a psychiatrist of his designation shall serve in his stead. The program, when drafted, shall be submitted by the Administrator to the court for approval.

The petitioner has not engaged in practice for over eight years and because of this and other considerations his restoration to active status at this time would not be proper. It is appropriate under the circumstances that the petitioner serve in the capacity of a paralegal, as the minority report of the Review Board proposed, for a period of not less than one year to restore his professional skills and to be exposed again to the peculiar stresses of the practice of law. The law office in which petitioner would be employed should be an office of a size and character that would permit the attainment of these objectives, and shall be one approved for this purpose by the Administrator. An attorney in the employing office under whose supervision the petitioner would work shall, periodically, but not more often than every three months, provide the Administrator with a report in writing on the quality of the petitioner's work as a paralegal. The report shall include the attorney's general appraisal of the petitioner's fitness to resume the practice of law. The responsibilities assigned the petitioner shall be those appropriate for a paralegal.

Any occurrence or development of significance involving petitioner which, in the judgment of the Administrator, requires reporting shall be brought to the attention of the

court. The Administrator, on the first anniversary of the petitioner's service as a paralegal, shall make an appropriate report to the court describing the petitioner's performance of duty and any other information relevant to the question of his being restored to the active practice of law.

The petition for restoration to active practice under the provisions of Rule 759 is at this time continued for disposition.

*Cause continued.*