(No. 60087

*In re* HYMAN SCHECHET, Petitioner.

*Opinion filed January 23, 1985.—Rehearing denied March 29, 1985.*

Harvey Sussman, of Sussman & Hertzberg, Ltd., of Chicago, for petitioner.

Deborah M. Kennedy, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

CHIEF JUSTICE CLARK delivered the opinion of the court:

The petitioner, Hyman Schechet, was admitted to the bar of Illinois in 1950. He was disbarred on consent, May 21, 1974. In an attempt to be reinstated, Schechet has filed three petitions for reinstatement with the Attorney Registration and Disciplinary Commission (the Commission) of this court: December 1978, May 1981, and June 1983. The petitioner withdrew his original petition for reinstatement. His 1981 petition was denied, and the 1983 petition is at issue in this appeal. A hearing was held before a panel of the Hearing Board of the Commission on this petition. The Hearing Board unanimously recommended to this court that the petition be denied. The Review Board unanimously affirmed that recommendation. The petitioner filed exceptions to the aforementioned recommendation. Under our Rule 767 (87 Ill. 2d R. 767), Schechet's petition is now before this court.

While this court has recognized the need to be uni-

form in the sanctions imposed in attorney disciplinary cases, we are also cognizant of the fact that each case presents a unique factual situation and must therefore be carefully evaluated based on its own merits. (See *In re Goldstein* (1984), 103 Ill. 2d 123.) Therefore, we will begin our analysis by reviewing the detailed facts of this case.

From 1966 to 1970, the petitioner and others conspired with a claims manager of the Hartford Accident and Indemnity Company (Hartford) in a scheme to submit fictitious insurance claims to Hartford. The claims manager caused the claims to be paid and then split the proceeds with the petitioner and the others. In 1972, with regard to this scheme, the petitioner pleaded guilty to mail fraud charges. He received a suspended sentence and was placed on 18 months' probation "on condition that if called to testify in any capacity, the defendant [would] cooperate and speak the truth."

In 1972, Hartford filed a civil suit against the petitioner and the others to recover the losses sustained as a result of the scheme, which allegedly totaled $208,478. Hartford claimed that the petitioner was responsible for $117,873 of the total loss. Pursuant to Hartford's offer to compromise its claim, the petitioner executed an affidavit in which he admitted receiving $77,383 from Hartford on some 47 fictitious claims. Judgment in that amount was entered against the petitioner on June 18, 1973.

Because of his involvement in this scheme, Schechet was disbarred on consent. Following his disbarment, the petitioner entered into an unsuccessful taxicab venture which lasted until March of 1975. Immediately after leaving the taxicab business, he commenced employment with Fidelity Electronics.

Although the petitioner made $23,000 in 1976 and $27,000 in 1977 at Fidelity Electronics, he made no pay-

ments to Hartford on the $77,383 judgment. He believed that the judgment was an insurmountable barrier and that there was no practical way for him to generate funds to pay the judgment. Accordingly, on November 1, 1977, the petitioner filed a voluntary petition in bankruptcy. In the accompanying schedule he listed "Hartford Insurance Company, Hartford Plaza, Chicago, Illinois" as a creditor for $80,000. However, notice of the bankruptcy either did not reach Hartford Accident and Indemnity Company (due to the petitioner's mistake in the company's name) or, if it did, it was not acted upon by Hartford. As a result, the petitioner received a full discharge in bankruptcy on September 21, 1977.

In 1978, Hartford attempted to collect on its judgment, and the petitioner thereupon filed a motion to enjoin any such collection. While the motion was pending, the petitioner filed his original petition for reinstatement with the Commission. Hartford's attorney sent the petitioner's attorney a letter notifying the petitioner that Hartford would vigorously oppose a petition for reinstatement because of the petitioner's failure to make any restitution. The petitioner thereupon withdrew his original petition for reinstatement.

As a result of negotiations, the petitioner and Hartford reached a settlement. Hartford agreed to accept only $12,000 in full satisfaction of the judgment. Payments were to be $100 per month over a 10-year period with no interest. At the time of this settlement, the petitioner was earning $35,000 per year at Fidelity Electronics, had a wife, two minor children, and one adult child at home, and had no other large indebtedness.

In 1979, Fidelity Electronics and the petitioner moved to Miami, Florida. Due to the "oppressive market conditions" the petitioner's employment was terminated on December 31, 1981. From January of 1982 until July of 1983, the petitioner was distributing products for Wa-

tham Manufacturing. However, in the later part of 1983, the petitioner surrendered this right of distribution to the Milton Bradley Company, and in consideration he received the sum of $50,000.

During the period of time that the petitioner was still employed by Fidelity Electronics, he again petitioned for reinstatement. This, his second petition, was denied. One month after the Commission's Hearing Board filed its report, in May of 1982, the petitioner advised Aetna Casualty and Surety Company (which now owns the debt) by letter that he was unemployed and unable to meet his obligations. However, approximately one month prior to advising Aetna of his inability to pay, the petitioner deposited the sum of $19,000 with the First Variable Rate Fund. The petitioner stated he was "creating an investment" for himself with those funds.

Within one month after advising Aetna of his inability to pay, the petitioner again sent a check to First Variable in the amount of $4,000. This too was "an investment." Three months after advising Aetna, the petitioner issued a check to First Nationwide Savings in the amount of $3,000. Notwithstanding having sufficient funds to meet his obligation with Aetna, the petitioner elected not to make any restitution payments until October 29, 1982.

The petitioner only made six $100 payments in the 13 months prior to filing the present petition for reinstatement. At the time that his petition was before the Hearing Board, Schechet stated he was unemployed but had an offer of employment as sales manager for a builder. Schechet also testified that he had made a total of 27 of 46 scheduled payments. In addition, the petitioner testified that he could not afford to meet his family obligations and his restitution payments. He did, however, testify that as of the date of his hearing, he had approximately $40,000 in savings accounts.

The petitioner alleges that he has not practiced law or given legal advice since his disbarment in 1974. The petitioner testified that he has taken a bar review course and received advance sheets from the law library of Dade County, Florida. In addition, he testified to having read extensively on legal matters.

The Review Board recommended to this court that Schechet's petition for reinstatement be denied. In reaching this recommendation, the Review Board found that Schechet's conduct demonstrated that "he is not rehabilitated, is not at present of good character, and is not fit to resume the practice of law in this state." The Review Board specifically found that the "petitioner's action in 1982, advising (Aetna), that he was unable to make restitution payments, while admitting under cross-examination that one month before, on March 8, 1982, he deposited $19,000 with First Variable Rate Fund as an investment, showed lack of candor and truthfulness."

This court has held that a petitioner seeking reinstatement to the practice of law has the burden to prove by clear and convincing evidence that he should be readmitted to practice. (*In re Kuta* (1981), 86 Ill. 2d 154, 157.) In this case, the petitioner has not met his burden.

Our Rule 767 (87 Ill. 2d R. 767), in part, provides the factors to be considered by a hearing panel of the disciplinary commission upon the filing of a petition for reinstatement as an attorney. The factors are:

"(a) the nature of the misconduct for which the petitioner was disciplined;

(b) the maturity and experience of the petitioner at the time discipline was imposed;

(c) whether the petitioner recognizes the nature and seriousness of the misconduct;

(d) when applicable, whether petitioner has made restitution;

(e) the petitioner's conduct since discipline was imposed; and

(f) the petitioner's candor and forthrightness in presenting evidence in support of the petition."

We shall now apply these factors to the present case. The first factor concerns the petitioner's misconduct. In this case, Schechet committed grave and calculated crimes. His misconduct involved a scheme to defraud an insurance company, which scheme lasted from 1966 until 1970. During that time he submitted 50 to 70 false claims to Hartford.

The second factor concerns the petitioner's maturity and experience at the time discipline was imposed. At the time the petitioner was disciplined for his misconduct, he had practiced law in Illinois for over 24 years and was 47 years old.

Admittedly, the petitioner recognizes the nature and seriousness of his misconduct and has stated regret for having ever participated in such a scheme. These facts go to the third factor listed above. Painful remorse has a value in rehabilitation but, by itself, is not enough. We believe that fitness to practice law cannot be demonstrated by an inner renouncement of wrongdoings and a verbal purging of one's soul, while at the same time contradicting such expressions with objectionable actions.

Whether the petitioner made restitution, the fourth factor, is the factor which concerns us the most in this case. We have held that restitution is a condition of reinstatement except in those rare instances where repayment to the victims is conclusively established to be an impossibility. (*In re Berkley* (1983), 96 Ill. 2d 404, 412.) Since such an impossibility does not exist in this case, Schechet would have had to have made restitution to be reinstated.

At his hearing in responding to the question of "What is restitution?", Schechet stated: "My concept is to meet the agreement of $12,000.00, to maintain $100.00 a month payments." However, even according to

the petitioner's definition of restitution, he has failed to meet his obligation. The record shows that from April of 1981 through October of 1982, *no* payments were made. The petitioner's payments from October of 1982 through April of 1983 were inconsistent, at best. In June of 1983, the petitioner filed his most recent petition for reinstatement. Since that filing until his 1983 Commission hearing he has made his payments. Prior to the Commission hearing, Schechet had made only 27 of the 46 payments required under the settlement.

The fifth factor, set forth in our Rule 767 (87 Ill. 2d R. 767), concerns the petitioner's conduct since discipline was imposed. Here the record shows that the petitioner has not committed any further crimes since his disbarment.

The sixth and final factor deals with a petitioner's candor and forthrightness in presenting evidence in support of his petition for reinstatement. In the case at bar, the petitioner's actions have shown a lack of candor and forthrightness. As stated earlier, the Review Board found that Schechet's action in 1982, of advising Aetna that he was unable to make restitution payments, while just one month before he had deposited $19,000 with the First Variable Rate Fund, showed a lack of candor and truthfulness. This court has repeatedly held that findings made by the Hearing Board and Review Board in attorney disciplinary proceedings are entitled to virtually the same weight as the findings of any initial trier of fact. See *In re Berkley* (1983), 96 Ill. 2d 404, 410; *In re Smith* (1979), 75 Ill. 2d 134, 138.

In the case at bar, we feel the Review Board's findings are amply supported by the record. Not only did the petitioner deposit $19,000 in a money market fund one month before notifying Aetna he "couldn't afford to make his [$100] payments," he also deposited another $4,000 in that fund just one month after his notification

to Aetna. In 1983, as of the date of his hearing, the petitioner's income was $62,000, he had $35,000 in a savings account, and he had assets with E. F. Hutton worth $3,700.

As of the date of the petitioner's 1983 hearing, he had not made restitution. He claims that the money he had saved was needed to protect his family. This court recognizes that a person has the right to provide for and protect his family in a reasonable manner; however, the record shows the petitioner went beyond providing for his family's necessities. During the time the petitioner chose not to make his $100 payments to Aetna, he was able to pay $100 a month for piano lessons for two of his children. The petitioner has really made his choice, and in so doing he has left this court with no other choice but to deny his petition for reinstatement.

For all the aforementioned reasons, we agree with the hearing and review boards that the petitioner has not met his burden of proving through clear and convincing evidence that he should be readmitted to practice. Accordingly, his petition for reinstatement to the roll of attorneys admitted to practice law in this State is denied.

*Petition denied.*