(No. 65039.—

*In re* FRANK A. ANGLIN, JR., Petitioner.

*Opinion filed May 18, 1988.*

John A. Holtaway, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Anne L. Fredd and Langdon D. Neal, of Earl L. Neal & Associates, of Chicago, for petitioner.

JUSTICE MILLER delivered the opinion of the court:

Frank A. Anglin, Jr., has petitioned this court for reinstatement to the roll of attorneys licensed to practice law in this State. The Hearing Board and Review Board have recommended reinstatement. The Administrator of the Attorney Registration and Disciplinary Commission, pursuant to Supreme Court Rule 753(e)(6), has objected to reinstatement and has petitioned this court for leave to file exceptions to the report and recommendation of the Review Board. (107 Ill. 2d R. 753(e)(6).) We granted the Administrator's request and now consider the petition for reinstatement.

Petitioner was licensed to practice law in this State on June 4, 1952. He practiced law in Chicago from that date until September 22, 1970, when he was suspended from practice for five years for commingling the funds of a client with his own and for making a false representation to the bar association committee that investigated him. *In re Anglin* (1970), 46 Ill. 2d 261.

Shortly after his suspension, and in a matter unrelated to the suspension, petitioner was arrested, and then tried and convicted in the United States District Court for the Northern District of Illinois, for the possession of stolen securities and for the possession of a handgun during the commission of a felony. Petitioner was sentenced to terms of three years' and one year's imprisonment, respectively, for the commission of those crimes, with the sentences to be served concurrently.

While serving the sentences, petitioner was subpoenaed before a Federal grand jury sitting in the Northern District of Illinois to answer questions concerning the identities of others involved in the plan to sell the stolen

securities. Petitioner refused to answer those questions at his initial appearance before the grand jury, and he refused again when questioned a month later. Petitioner continued his refusal to testify after receiving a grant of immunity, and he was then held in civil contempt. As a result of the contempt, petitioner spent 15 months in the Cook County jail in Chicago and 3 months in the Winnebago County jail in Rockford.

Petitioner's claim that the time spent by him in custody for contempt was to be credited against his initial sentences for the possession of the stolen securities and the possession of the handgun was rejected by the district court (*Anglin v. Johnston* (N.D. Ill. 1974), 378 F. Supp. 750), and by the court of appeals (*Anglin v. Johnston* (7th Cir. 1974), 504 F.2d 1165, *cert. denied* (1975), 420 U.S. 962, 43 L. Ed. 2d 440, 95 S. Ct. 1353).

While the appeal in the contempt proceeding was pending in Federal court, petitioner filed a petition in this court to remove his name from the roll of attorneys licensed to practice law in this State. He was disbarred on consent on September 30, 1974.

On October 19, 1984, petitioner filed in this court the present petition for reinstatement to the roll of attorneys. (107 Ill. 2d R. 767.) Citing petitioner's prior misconduct and his refusal to disclose even now the names of those who were involved with him in the stolen securities transaction, the Administrator of the Attorney Registration and Disciplinary Commission filed objections to petitioner's petition for reinstatement.

At the reinstatement hearing before a panel of the Hearing Board, petitioner presented the testimony of numerous witnesses who attested to his character, rehabilitation, and current knowledge of the law. The petitioner, however, when asked the following questions by counsel for the Administrator, gave the following answers:

"Q. From whom did you get the securities that were in your possession at the time of your arrest?

A. That is the question that I have always felt it would not be proper for me to answer. That is the question which is the proximate cause for me receiving a sentence of three years, an additional sentence of 18 months. I have refused to answer that question on grounds that— on my feeling that no one should share my responsibility for the crime that I committed.

Q. From whom did you get the securities that were in your possession at the time of your arrest?

A. And I yet refuse to answer that question.

Q. Who else was involved in obtaining the 500 bearer bonds?

A. I refuse to answer that question.

Q. Is it correct that there were other people involved?

A. Yes.

Q. Now you were going to share the sale, the proceeds from the sale of the securities, with someone else. Is that correct?

\* \* \*

A. Yes.

Q. Where did you go to obtain the securities prior to the time of your arrest?

A. The securities were delivered to me.

Q. Who delivered the securities to you?

A. I refuse to answer that question.

Q. Mr. Anglin, is it correct that with regard to the sale of the securities you were just a messenger?

A. Yes and no. I was just a messenger. It was not my affair. It was not my business. But I accepted that responsibility and certainly have to be in pari delicto with any person whose business it was.

Q. Would it be correct to say that you were consummating a deal for someone else?

A. Not exactly because I was a—by being involved, I became a principal.

Q. Were the bearer bonds being kept at your old law office at 33 North Dearborn Suite 720?

A. In my opinion, they were not.

Q. Do you know for sure that they were not?

A. I feel reasonably certain that they were not.

Q. Isn't it correct, Mr. Anglin, that you did not steal the securities from the interstate shipment?

A. That is correct.

Q. You testified I believe that 33 North Dearborn Suite 720 as of December 1980 [a second attorney] had an office at that suite?

A. Yes.

Q. Isn't it correct that [the second attorney] had nothing to do with the stolen securities?

A. That is correct.

Q. [A third attorney] had an office at that address at that time?

A. Yes.

Q. And it's correct that [the third attorney] had nothing to do with the stolen securities?

A. That is correct.

Q. [A fourth attorney] had an office at 33 North Dearborn in December 1980?

A. Yes.

Q. Did [the fourth attorney] have anything to do with the stolen securities?

A. I refuse to answer that question because a continuation of listing persons in that office could reach a point where I might not answer and create an impression that someone in that office did have something to do with the securities.

MR. GALLIANI [member of hearing panel]: We will accept that observation, that diagnosis on your part, Mr. Anglin, and ask counsel not to continue to category [sic] and successively identify members of his law firm and asking whether they may or may not have been criminally involved in the proceedings."

The Hearing Board recommended reinstatement upon petitioner's passing the Multi-State Professional Responsibility Examination. The Hearing Board believed that although petitioner had been convicted and sentenced for

a serious crime and had adhered "to an obscene code of silence and non-disclosure about evil which malevolently erodes public confidence," nonetheless he had paid for that crime and silence, had rehabilitated himself, and would never again disgrace the profession by any act or failure to act if he were reinstated. The Hearing Board found that numerous witnesses for petitioner testified unconditionally about his good reputation and character over the past decade.

On May 7, 1986, the Administrator filed with the Review Board exceptions to the report and recommendation of the Hearing Board. (107 Ill. 2d R. 753(e)(1).) The exceptions centered on petitioner's refusal at the reinstatement hearing to answer certain questions regarding the involvement of other persons with the stolen securities. The Review Board, after considering the record, affirmed the recommendation of the Hearing Board. The Administrator then petitioned this court for leave to file exceptions to the report and recommendation of the Review Board.

The Administrator contends that petitioner's refusal to answer questions concerning the involvement of others in the stolen-securities transaction demonstrates a failure on the part of petitioner to prove rehabilitation and current fitness to practice law. Petitioner responds that he has met his burden of proof by evidence of rehabilitation and current fitness to practice law.

Petitioner must prove by clear and convincing evidence that he is rehabilitated and currently fit to practice law. (*In re Rothenberg* (1985), 108 Ill. 2d 313, 323; *In re Zahn* (1980), 82 Ill. 2d 489, 494.) Rehabilitation means that one has returned "to a beneficial, constructive and trustworthy role." *In re Cohen* (1981), 83 Ill. 2d 521, 526; *In re Wigoda* (1979), 77 Ill. 2d 154, 159.

The hearing panel to which a matter is referred must determine in the first instance whether a petitioner is re-

habilitated, of present good character, and currently knowledgeable about the law. In making those determinations, the panel is to consider the following factors and any other factors the panel deems appropriate:

"(1) the nature of the misconduct for which the petitioner was disciplined;

(2) the maturity and experience of the petitioner at the time discipline was imposed;

(3) whether the petitioner recognizes the nature and seriousness of the misconduct;

(4) when applicable, whether petitioner has made restitution;

(5) the petitioner's conduct since discipline was imposed; and

(6) the petitioner's candor and forthrightness in presenting evidence in support of the petition." 107 Ill. 2d R. 767(f).

We are mindful at the outset that the findings of fact made by the hearing panel are entitled to virtually the same weight as the findings of any initial trier of fact (*In re Schechet* (1985), 105 Ill. 2d 516, 523; *In re Berkley* (1983), 96 Ill. 2d 404, 410; *In re Wigoda* (1979), 77 Ill. 2d 154, 158-59; *In re Smith* (1979), 75 Ill. 2d 134, 138), yet we are also aware that the recommendations of the hearing panel and Review Board resulting from the findings of fact are advisory and not binding (*In re Wigoda* (1979), 77 Ill. 2d 154, 158; *In re Ashbach* (1958), 13 Ill. 2d 411, 418). Deference will be accorded to findings of fact, for the hearing panel is able to observe the demeanor of witnesses, judge their credibility and evaluate conflicting testimony. (*In re Wigoda* (1979), 77 Ill. 2d 154, 158.) The evidence elicited at petitioner's reinstatement hearing is not in contention. The point of contention in this case is the conclusion to be drawn from that evidence.

The facts reveal that petitioner adhered to his own code of conduct in the past and that he continues to do

so today. The hearing panel and Review Board nonetheless concluded that petitioner proved his rehabilitation and current fitness to practice law and recommended that he be reinstated. We disagree with that conclusion and therefore decline to follow the recommendation. The hearing panel and Review Board have focused almost entirely on the past actions of petitioner and his efforts to rehabilitate himself. We agree with the panel and the Review Board that petitioner has, in general, tried to rehabilitate himself. We believe, however, that petitioner has failed to rehabilitate himself in one crucial respect, for he continues to follow the same code of silence for which he was held in contempt. Rehabilitation must be proved by clear and convincing evidence, and it is not sufficient that rehabilitation is shown to be more probable than not. (*In re Silvern* (1982), 92 Ill. 2d 188, 195.) Petitioner's continuing belief in a code of silence and nondisclosure of the misconduct of others under the circumstances described prevents us from concluding that he is clearly and convincingly rehabilitated and currently fit to practice law.

Petitioner's refusal to answer questions about the involvement of other persons in his possession of the stolen securities also evidences a present and future inability to conform to the Code of Professional Responsibility. Under Disciplinary Rule 1—103 a lawyer has the duty to report the misconduct of other lawyers. (107 Ill. 2d Rules 1—103, 1—102(a)(3), (a)(4).) Petitioner's belief in a code of silence indicates to us that he is not at present fully rehabilitated or fit to practice law. Whether or not petitioner is ever again questioned by the proper authorities about other persons' involvement in his crime, petitioner's past and present statements cause us to believe that he would fail to report the misconduct of other attorneys if he, too, were involved in it.

540

Because petitioner continues to express a belief in a code of personal conduct that is inconsistent with a portion of our Code of Professional Responsibility, we are not convinced that he has been fully rehabilitated and is currently fit to practice law.

Petitioner's petition for reinstatement to the roll of attorneys licensed to practice law in this State is, therefore, denied.

*Petition denied.*