Docket No. 88589–Agenda 10–January 2000.

 In re
 DAVID EUGENE ECKBERG, Attorney, Respondent.

Opinion filed July 6, 2000.

JUSTICE McMORROW delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission (ARDC) filed a petition with the Hearing Board, pursuant to Supreme Court Rule 758 (137 Ill. 2d R. 758), seeking a determination whether respondent, David Eugene Eckberg, was incapacitated from continuing to practice law by reason of a mental infirmity or a mental disorder and should be transferred to inactive status. The Hearing Board determined that although respondent had been incapacitated from continuing to practice law at the time the Administrator filed the petition, respondent was not incapacitated at the time of the hearing. The Hearing Board nevertheless recommended that, in order to remain on active status, respondent should abide by conditions which required his continued medical treatment and monitoring for a period of five years. The Review Board affirmed the findings and recommendations of the Hearing Board. However, the Review Board modified the conditions to reduce their scope and extent. Respondent appeals the recommendation by the Review Board that conditions be imposed upon his continued practice of law. This court granted respondent’s petition for leave to file exceptions. See 166 Ill. 2d R. 753(e)). For the reasons that follow, we reject the recommendation of the Review Board, and we dismiss this action.

BACKGROUND

I. The Evidence

 On December 20, 1996, the Administrator filed a petition, pursuant to Rule 758, requesting that the Hearing Board determine whether respondent was incapacitated from continuing to practice law by reason of mental infirmity or mental disorder, and whether he should be transferred to inactive status pending removal of the disability. The following evidence, relevant to the issues before this court, was presented.

Respondent is 57 years old and was admitted to the practice of law in 1968. Thereafter, he was an assistant State’s Attorney, an attorney for a state governmental agency, and a private practitioner. Since 1978, respondent has worked as a sole practitioner in Chicago, handling cases involving unemployment, wrongful termination, domestic relations, criminal matters, and condemnation proceedings. Also since 1978, respondent has continuously been a member of the Chicago Bar Association in-court referral panel, where he is assigned to a courtroom on one day of the month. Approximately 50% of respondent’s case load consists of these in-court referral cases, and, typically, these cases are disposed of on the same day that they are assigned to respondent. Respondent is also a participant in the Chicago Bar Associations’ lawyer referral program and receives approximately 20% of his case load, or four cases per month, from this program. Respondent has no prior disciplinary complaints filed against him.

In June 1996, the Administrator initiated an investigation of respondent’s capacity to practice law as a result of two letters written by respondent to the FBI, an Illinois Supreme Court Justice, and a United States Congressman. In the first letter, dated June 9, 1996, respondent alleged that he was the object of a conspiracy directed by his co-counsel in a “sham” legal malpractice case pending in the circuit court of Cook County. Respondent further alleged that his estranged wife and her father were also plotting against him. According to respondent, as a result of this conspiracy, he was “under death threat,” and was being followed on a constant basis for at least one month. Respondent’s second letter, dated June 16, 1996, contained similar conspiracy allegations.

Copies of respondent’s two letters were sent by the Supreme Court Justice to the ARDC, which requested that respondent contact that office to discuss the matters contained in the letters. Respondent appeared at the offices of the ARDC on June 28, 1996, and continued to claim that he was the object of harassment and death threats made by his wife, her father, and other Illinois attorneys. Respondent also expressed concern that his letters had come into the Administrator’s possession. In a subsequent letter sent to the ARDC, respondent asserted that the ARDC investigation was “endangering [his] personal life [and] perhaps the lives of others.” Respondent concluded this letter by asking that the ARDC close his file.

 On October 17, 1996, the Administrator requested that respondent voluntarily submit to a psychiatric examination by an impartial medical examiner. The next day, respondent appeared at the offices of the ARDC and agreed to submit to a psychiatric evaluation. Arrangements were made for respondent to be evaluated by Dr. S. Dale Loomis, a board-certified psychiatrist, at Dr. Loomis’ office.

However, respondent did not meet with Dr. Loomis as scheduled because respondent was hospitalized in the psychiatric unit at Rush-Presbyterian St. Luke’s Hospital on October 23, 1996. Evidence at the hearing revealed that respondent had been previously hospitalized at Lutheran General Hospital in 1989. The records from respondent’s 1989 hospitalization made reference to prior psychiatric hospitalizations, and indicated that respondent had a history of psychiatric disturbances over a 20-year period. At the time of his 1989 hospitalization, respondent was diagnosed as having a generalized anxiety disorder.

During respondent’s 1996 hospitalization, which lasted from October 23 to November 11, he was diagnosed as having a generalized anxiety disorder, although bipolar affective disorder was also suspected at that time. In addition, a neuropsychological evaluation indicated that respondent may suffer from frontal lobe syndrome, an organic brain disease which impairs judgment and behavior. After his release from Rush, respondent voluntarily admitted himself to the psychiatric ward at Lutheran General Hospital on November 11, 1996, in response to his wife’s report to the local fire department that respondent indicated that he intended to commit suicide.

Subsequent to respondent’s release from Lutheran General Hospital in December 1996, the Administrator filed the petition at issue in this case. At the hearing before the Hearing Board, four psychiatrists presented testimony. Three of these psychiatrists, Dr. S. Dale Loomis, Dr. Stafford Henry, and Dr. Robert Galatzer-Levy, had examined respondent for the purposes of these proceedings and testified on behalf of the Administrator. The fourth psychiatrist, Dr. Carl Aagesen, was respondent’s treating psychiatrist and testified on respondent’s behalf.

Dr. Loomis testified that his initial contact with respondent was during respondent’s hospitalization at Lutheran General in November 1996. According to Dr. Loomis, during this one hour session, respondent talked very rapidly, constantly spoke of tangential matters which made his speech difficult to follow, and claimed that he was the target of a conspiracy in which he had been constantly followed and his phones tapped. Dr. Loomis testified that respondent denied any medical reason for his hospitalization, instead asserting that he had been “railroaded” into the hospital by his wife. On the basis of this initial examination, Dr. Loomis concluded that respondent suffered from a bipolar disorder.

Almost one year later, in December 1997, Dr. Loomis conducted a second interview with respondent. Dr. Loomis testified that during their meeting, respondent’s thought processes were “extremely scattered,” respondent behaved in an expansive, grandiose, and paranoid manner, and, after a period of time, respondent became resentful of being questioned. Based upon this second meeting, Dr. Loomis reaffirmed his diagnosis of bipolar disorder. He specifically disagreed with the conclusion of respondent’s treating psychiatrist, Dr. Aagesen, that respondent suffers from generalized anxiety disorder. Dr. Loomis testified that, if left untreated, respondent would likely experience “repeated cycling episodes” of mania and depression, and recommended that respondent be treated with psychiatric management and a mood-stabilizing medication. Based upon his two sessions with respondent, Dr. Loomis concluded that respondent was incapable of practicing law. On cross-examination, Dr. Loomis acknowledged that he was unaware of the types or complexity of the cases respondent handled before, during, and after his hospitalizations.

The Administrator also called Dr. Stafford Henry to testify. He evaluated respondent during a 2½-hour session in July 1997. Dr. Henry testified that respondent was “generally agitated,” jumped “from subject to subject” in an incoherent manner, and believed that he was the target of a far-reaching conspiracy. Dr. Henry diagnosed respondent as having bipolar affective disorder, accompanied by the psychotic features of paranoia and suspiciousness. Dr. Henry opined that, at the time of the evaluation, respondent was not competent to practice law because respondent’s thinking was characterized by disturbed and disorganized thoughts, and was not reality-based. In addition, Dr. Henry found that respondent lacked insight into the severity of his illness.

Dr. Henry further testified that, based upon the classic symptoms of bipolar affective disorder displayed by respondent, he disagreed with the diagnosis of Dr. Aagesen that respondent suffers from generalized anxiety disorder. According to Dr. Henry, respondent’s treatment under Dr. Aagesen was therefore inappropriate because respondent’s bipolar disorder has not been addressed. Because bipolar disorder is a progressive illness that will worsen if untreated, Dr. Henry opined that respondent requires a structured, secure environment, and medication with mood-stabilizing drugs.

When questioned about respondent’s apparent ability to continue to handle legal matters without incident subsequent to his hospitalizations, Dr. Henry opined that because respondent’s cases were primarily “simple matters,” respondent was merely operating “out of rote and routine.” On cross-examination, however, Dr. Henry admitted that he was unaware that respondent handled more complex legal matters after his hospitalizations.

The third and final psychiatrist called by the Administrator was Dr. Robert Galatzer-Levy, who interviewed respondent on three occasions in 1998: twice in February, and once in March, for a total time of approximately 2½ hours. Dr. Galatzer-Levy also examined respondent’s past medical records, which showed that respondent failed to continue treatment after he had left the hospital, and had unilaterally decided to discontinue prescribed medication.

Dr. Galatzer-Levy diagnosed respondent as suffering from schizoaffective disorder, frontal lobe syndrome, generalized anxiety disorder, and personality disorder not otherwise specified, with borderline features. Based upon his findings that respondent’s judgment was impaired, Dr. Galatzer-Levy concluded that, at the time of his evaluations, respondent was incapacitated from practicing law. However, on cross-examination, Dr. Galatzer-Levy acknowledged that he was not aware of any instance where respondent’s psychiatric difficulties directly interfered with his capacity to practice law.

The final psychiatrist to testify during the proceedings was Dr. Carl Aagesen, respondent’s treating psychiatrist. Dr. Aagesen first met respondent in July 1997, when respondent was referred to him for evaluation of the need for continuing on the medication known as librium. Respondent thereafter requested that Dr. Aagesen evaluate him for psychiatric suitability to practice law. The initial session lasted approximately two hours. Based upon this session, as well as a review of respondent’s medical history, Dr. Aagesen made an initial diagnosis of generalized anxiety disorder. However, the doctor informed respondent that it would take several months of observation before he could render an opinion upon whether respondent’s generalized anxiety disorder would prevent him from practicing law.

After meeting with respondent on a monthly basis, Dr. Aagesen concluded in November 1997 that respondent was capable of practicing law. Dr. Aagesen testified that, since the beginning of his treatment of respondent, he had observed no symptoms that would preclude respondent’s practice of law, and he noted that respondent had continued to practice law without complaint during his treatment.

Dr. Aagesen did recommend, however, that respondent continue with his psychiatric treatment. On cross-examination, Dr. Aagesen acknowledged that during his sessions with respondent, there have been “isolated instances” when he believed that respondent’s judgment was impaired, but testified that these rare occurrences did not cause him either to alter his diagnosis or to change his opinion that respondent is capable of practicing law.

Respondent testified in his own behalf. Respondent stated that since summer 1996 he has been practicing law consistently, handling cases in the areas of unemployment, wrongful termination, domestic relations, traffic, and criminal law. Respondent testified that he has sessions with Dr. Aagesen on a monthly basis, and has attempted to follow all of the doctor’s recommendations. Respondent stated that he believes that he suffers from anxiety that needs to be controlled by medication, and that he will abide by Dr. Aagesen’s treatment program in the future. Although respondent admitted that, while under Dr. Aagesen’s care, he took steps on his own to discontinue taking the medication librium, respondent explained that he believed that it was necessary to show progress during these proceedings, and that Dr. Aagesen had intended that respondent eventually stop taking that medication in favor of another. In addition, respondent did not suffer any adverse reaction from discontinuing the medication.

In explanation of his actions in 1996, respondent testified that he “was under tremendous stress, tirade [
sic
], and upheaval,” and that he will not repeat those or similar actions. Respondent stated that he does not believe that he has been hindered in the practice of law as a result of his mental condition, and that he has continued to represent clients in a wide variety of legal matters.

II. The Hearing Board

The Hearing Board issued its report and recommendation on September 3, 1998. The Hearing Board found that the Administrator established, by clear and convincing evidence, that respondent suffered from a mental illness in 1996, and was incapacitated from practicing law at that time. However, the Hearing Board also found that, as of September 1998, the Administrator failed to prove that respondent was incapacitated from continuing to practice law, and accordingly recommended that the request to place him on inactive status be denied.

The decision of the Hearing Board was premised on several factors. First, the Hearing Board determined that the evidence established that respondent practiced law without complaint since 1996, and that he handled numerous cases of varying degrees of complexity. The Hearing Board found that there was no evidence that respondent handled these cases in less than a competent manner, or that his mental state interfered with his representation of his clients. Further, the Hearing Board found it significant that respondent has remained on the Chicago Bar Association panels for referrals, and has continued to receive in-court referrals from circuit court judges.

In addition, the Hearing Board determined that the evidence established that Dr. Aagesen had treated respondent on a monthly basis since July 1997, and that the doctor had observed no symptoms that would demonstrate that respondent was incapable of practicing law. The Hearing Board noted that although the three psychiatrists presented by the Administrator opined that respondent was not receiving appropriate treatment from Dr. Aagesen, these opinions also ignored the fact that, under Dr. Aagesen’s current treatment, respondent has continued to engage in the practice of law and to function without incident. The Hearing Board stated that it was “mindful” of the conclusions of Drs. Loomis, Henry, and Galatzer-Levy that, at the time of their evaluations, respondent was incapacitated from practicing law due to bipolar illness, and that these conclusions conflicted with Dr. Aagesen’s diagnosis of respondent as suffering from a generalized anxiety disorder, as well as his conclusion that respondent is capable of practicing law. The Hearing Board, however, determined that Dr. Aagesen, as respondent’s treating physician, was in the best position to assess respondent’s current mental state, as he had been the only professional to see respondent on a regular basis and spend a significant amount of time with him.

Finally, the Hearing Board was influenced by respondent’s demeanor during the hearing. The Hearing Board found that respondent’s answers to questions were “responsive and appropriate,” that respondent “behaved in lawyerlike manner,” that respondent “was knowledgeable about his disciplinary case and about the court cases he has litigated in the past year,” and that respondent did not exhibit any of the classic symptoms of bipolar disorder during the hearing.

However, although the Hearing Board found that respondent was currently capable of practicing law in a satisfactory manner “and that the protection of the public would not be served by suspending his privilege to practice law at the present time,” the Hearing Board nevertheless recommended that respondent “should be allowed to exercise this privilege only if he abides by certain conditions calculated to protect the public.” Citing to this court’s decision in 
In re Hessberger
, 96 Ill. 2d 423 (1983), and stating that “[t]he principles of 
Hessberger
 establish that reasonable conditions may be imposed upon respondent to insure that he continues to practice law only as long as he is capable of doing so and the condition that incapacitated him does not again manifest itself,” the Hearing Board recommended that respondent be permitted to practice law, subject to the following conditions: (1) respondent shall continue a course of treatment with a board-certified psychiatrist and shall meet with that psychiatrist on a regular basis, not less frequently than once each month, and the Administrator shall be advised in writing of any material change in the treatment plan; (2) respondent shall execute a release authorizing his psychiatrist to provide the Administrator with a quarterly written report of respondent’s compliance with the treatment plan, answer the Administrator’s questions regarding respondent’s mental condition, and inform the Administrator of noncompliance with treatment or any conduct which the psychiatrist believes to be symptomatic of a condition that will possibly incapacitate respondent from competently practicing law; (3) respondent shall provide a quarterly written report to the Administrator articulating any problems which have arisen in the handing of any matters that may relate to his mental disorder, or stating that there have been none; and (4) respondent shall notify the Administrator in writing within seven days of any change in the name/address of his treating physician. The Hearing Board recommended that the above conditions remain in effect for a period of five years from the date this court issues its final order in this case.

III. The Review Board

Respondent objected to, and appealed from, the imposition of conditions on his continued practice of law. Before the Review Board, respondent filed exceptions challenging the Hearing Board’s jurisdiction to recommend that his right to continue to practice law be subject to conditions after it was determined that the Administrator failed to establish that respondent was not presently incapacitated from practicing law. The Administrator sought to uphold the conditions recommended by the Hearing Board and did not challenge the Hearing Board’s conclusion that respondent is not currently incapacitated from practicing law.

The Review Board affirmed the Hearing Board’s findings, concurring that the evidence presented during the hearing demonstrated that respondent had an extensive history of cyclical mental health problems. The Review Board noted that all four psychiatrists agreed during the hearing that respondent should continue in psychiatric treatment in order to control his condition, and that respondent could function well if he complied with the treatment recommendations. All doctors also agreed that, without treatment, respondent would experience repeated episodes in which his ability to function would be impaired.

The Review Board rejected respondent’s contention that the finding that he was not presently incapacitated was inconsistent with the recommendation to impose conditions upon his continued practice of law. The Review Board concluded that, based upon the evidence presented during the hearing, the recommended conditions were necessary in order to minimize the risks to the public if there were a recurrence of respondent’s mental health problems. The Review Board concluded that Rule 758 allows the Hearing Board to recommend that an attorney be permitted to continue to practice law subject to reasonable conditions as warranted by the circumstances and as approved by this court.

The Review Board affirmed the substance of the conditions recommended by the Hearing Board, but modified the conditions to reduce their scope and extent. The Review Board recommended that respondent be permitted to practice law, subject to the following modified conditions:

“1. Respondent shall continue in his course of treatment with Dr. Aagesen, or such other qualified mental health professional acceptable to the Administrator, and shall report to Dr. Aagesen or such other qualified mental health professional on a regular basis of not less than once per month, with the Administrator advised of any change in attendance deemed warranted by such professional;

2. Respondent shall comply with all treatment recommendations of Dr. Aagesen or such other mental health professional, including the taking of medications as prescribed;

3. Respondent shall provide to Dr. Aagesen, or such other qualified mental health professional, an appropriate release as required under the Confidentiality Act of the Mental Health Code, 740 ILCS 110/1 et.seq., authorizing the treating professional to: (1) disclose to the Administrator on at least a quarterly basis information pertaining to the nature of respondent’s compliance with any treatment plan established with respect to respondent’s condition; (2) promptly report to the Administrator respondent’s failure to comply with any part of an established treatment plan; and (3) respond to any inquiries by the Administrator regarding respondent’s mental or emotional state or compliance with any established treatment plan;

4. Respondent shall notify the Administrator within 14 days of any change in treatment professionals.”

The Review Board agreed with the Hearing Board that these conditions are to remain in effect for a period of five years from the date this court issues its final order in this case.

ANALYSIS

The principles governing our review of the reports and recommendations of both the Hearing Board and the Review Board are clearly established. The Administrator bears the burden of proving the allegations contained within the petition by clear and convincing evidence. 137 Ill. 2d R. 758(b); 166 Ill. 2d R. 753(c)(6).

The findings of fact made by the Hearing Board are entitled to virtually the same weight as the findings of any initial trier of fact.
 In re Parker
, 149 Ill. 2d 222, 233 (1992); 
In re Owens
, 144 Ill. 2d 372, 377 (1991). Deference is to be accorded to findings of fact made by the Hearing Board, for the Hearing Board is able to observe the witness’ demeanor, judge his credibility, and resolve conflicting testimony. 
In re Spak
, 188 Ill. 2d 53, 66 (1999); 
In re Anglin
, 122 Ill. 2d 531, 538 (1988). Therefore, this court will generally not disturb the Board’s factual findings unless they are against the manifest weight of the evidence. 
In re Timpone
, 157 Ill. 2d 178, 196 (1993); 
In re Ushijima
, 119 Ill. 2d 51, 56-57 (1987). However, the recommendations of both the Hearing Board and the Review Board resulting from their findings of fact are advisory and not binding on this court. 
In re Imming
, 131 Ill. 2d 239, 251 (1989); 
In re Karzov
, 126 Ill. 2d 33, 40 (1988); 
Anglin
, 122 Ill. 2d at 538.

Before this court, neither party challenges the factual findings of the Hearing Board or the Review Board. Significantly, neither the ARDC nor respondent challenge the finding of both the Hearing Board and the Review Board that respondent was not mentally incapacitated from practicing law. At issue in this case is whether, despite the factual finding of the Boards that respondent is not incapacitated from practicing law, the imposition of conditions upon respondent’s continued practice of law is warranted by the circumstances. Respondent contends that the factual finding that the Administrator failed to meet her burden of proof to show his incapacity to practice law should have resulted in the dismissal of the Administrator’s Rule 758 petition. Therefore, respondent asserts, the Hearing and Review Boards improperly recommended conditions upon respondent’s practice of law which were neither requested by the Administrator in the petition, nor argued by the parties during the hearing. During oral argument before this court, counsel for respondent raised the additional contention that the Hearing Board’s 
sua sponte
 formulation and recommendation of these conditions upon respondent’s continued law practice violated respondent’s right to due process, as he was denied notice and an opportunity to be heard on the imposition of conditions.

The resolution of this matter is dependent upon Supreme Court Rule 758, which provides, in pertinent part:

“(a) Petition. If the inquiry Board has reason to believe that an attorney admitted to practice in this State is incapacitated from continuing to practice law by reason of mental infirmity [or] mental disorder *** the Administrator shall file a petition with the Hearing Board requesting a hearing to determine whether the attorney is incapacitated and should be transferred to inactive status pending the removal of the disability, or be permitted to continue to practice law subject to conditions imposed by the court.

***

(c) Transfer to Inactive Status. If the court determines that the attorney is incapacitated from continuing to practice law, the court shall enter an order transferring the attorney to inactive status until further order of the court. The court may impose reasonable conditions upon an attorney’s continued practice of law warranted by the circumstances.” 137 Ill. 2d R. 758.

Under the plain language of Rule 758, the authority to determine whether appropriate conditions are to be placed upon an attorney’s continued practice of law rests solely with this court. Subsection (c) of Rule 758 explicitly vests this court with the exclusive power to impose conditions upon an attorney’s practice if warranted by the circumstances. We must therefore determine whether an exercise of this authority is appropriate in light of the facts of this case. We reject the recommendation of the Hearing and Review Boards, and conclude that the imposition of conditions upon respondent’s practice of law is unwarranted by the circumstances. There is no dispute that the evidence presented during the hearing showed that, prior to 1996, respondent had practiced law without complaint for nearly three decades. It was also established that during the period that respondent was found to be incapacitated in 1996, no client had been harmed by his actions. Furthermore, the evidence established that, since the events of 1996, respondent has continued to practice law without incident or complaint. Respondent testified that he handles a wide variety of legal matters, including unemployment and wrongful-termination suits, condemnation cases, domestic relations matters, and traffic cases. In addition, respondent handles misdemeanor and felony criminal cases. The evidence also showed that respondent has, since 1978, been a member of the Chicago Bar Association’s lawyer referral program, as well as a participant in the Chicago Bar Association’s in-court referral panel. Subsequent to the events of 1996, respondent has remained involved with these Chicago Bar Association programs, and has continued to receive in-court referrals from circuit court judges. No evidence was presented during the hearing to indicate that respondent has handled cases in less than a competent manner, or that his representation of clients was hindered by his mental state.

The evidence established that Dr. Aagesen has treated respondent on a monthly basis since July 1997, and that he has observed no symptoms demonstrating that respondent is incapable of practicing law. Although there was testimony from the psychiatrists called by the Administrator that Dr. Aagesen has not provided respondent with appropriate treatment, it is undisputed that, under Dr. Aagesen’s care, respondent has continued to practice law without incident. As respondent’s treating psychiatrist, Dr. Aagesen was the only testifying professional to meet with respondent on a regular basis, to spend a substantial amount of time with him, and to give an opinion concerning respondent’s mental state and capacity to practice law as of the time of the hearing in June 1998. In contrast, the three psychiatrists called by the Administrator examined respondent for short, isolated periods of time, and gave opinions regarding respondent’s mental state and capacity to practice law as of the time of these examinations. We note that each of the three psychiatrists admitted during cross-examination that they were unaware of the types or complexity of cases respondent handled before, during, and after his hospitalizations.

We also note the statement of the Hearing Board that its decision to find respondent competent to practice law was “influenced” by respondent’s demeanor during the hearing. The Hearing Board found that respondent’s answers to questions were “responsive and appropriate,” that respondent “behaved in a lawyerlike manner,” that respondent “was knowledgeable about his disciplinary case and about the court cases he has litigated in the past year,” and that respondent did not exhibit any of the classic symptoms of bipolar disorder during the hearing.

Proceedings involving attorney competence have as their goal the protection of the public, the maintenance of the integrity of the profession, and the safeguarding of the administration of justice from reproach. See 
In re Smith
, 168 Ill. 2d 269, 295 (1995). The Administrator argues that, in light of respondent’s lengthy history of mental illness, conditions upon respondent’s continued practice of law are reasonable and warranted “to minimize the risk to the public that would be presented by respondent’s unconditional maintenance on active status.” In support of this argument, the Administrator relies upon this court’s ruling in 
In re Hessberger
, 96 Ill. 2d 423 (1983), stating that “the concern expressed in 
Hessberger
 is one that should be recognized to exist in the present case.” We find 
Hessberger
 to be inapposite to the matter at bar.

In 
Hessberger
, an attorney who suffered from bipolar illness and who had been placed on inactive status after killing his wife petitioned for restoration to active status pursuant to Supreme Court Rule 759. In continuing Hessberger’s petition for restoration to active practice, this court determined that, in the circumstances presented in that case, it was inappropriate to immediately restore Hessberger to active practice after eight years of inactivity. Instead, this court, 
inter alia
, instructed Hessberger’s treating psychiatrist to prepare a program which would reasonably insure that Hessberger followed his medication schedules and which would subject Hessberger to periodic medical examinations to insure that he had not suffered any recurrence of mental disorder or developed any new condition which would disable him from practicing law. 
Hessberger
, 96 Ill. 2d at 430-31. The procedural posture and circumstances present in 
Hessberger
 stand in sharp contrast to that in the instant case. In the matter at bar, respondent, unlike Hessberger, has never been transferred to inactive status and has continued to practice law without incident. Therefore, no petition for reinstatement under Rule 759 is involved in this case. Accordingly, we find the Administrator’s reliance upon the reasoning in 
Hessberger
 to be misplaced.

We are mindful that the psychiatric testimony adduced during respondent’s hearing established that respondent requires on-going psychiatric treatment and administration of mood-stabilizing drugs. All four experts were in agreement that with such treatment respondent can function well and avoid a recurrence of the symptoms which initially caused the Administrator to file this competency petition in 1996. We find it significant that, since 1996, respondent has been under regular psychiatric care and medication management, and has practiced law satisfactorily during this period. We also find it significant that respondent testified during the hearing that he knows that he suffers from a mental condition which requires medication, that he has complied with Dr. Aagesen’s treatment recommendations, and that he will continue treatment with Dr. Aagesen and abide by the doctor’s recommendations in the future. It would be too speculative for this court to conclude that, in the future, respondent will experience mental difficulties which will incapacitate him from continuing to practice law. Indeed, the psychiatrists testifying on behalf of the Administrator could not state with certainty if, or when, respondent would experience a debilitating mental occurrence. There is insufficient basis to conclude that, despite his assurances to the contrary, respondent will not continue psychiatric treatment and take the prescribed medication. If any question were to arise in the future concerning respondent’s ability to practice law due to his mental condition, the Administrator retains the option to initiate new proceedings pursuant to Rule 758.

As a final matter, we note that during oral argument before this court, counsel for respondent, for the first time, contended that a violation of respondent’s rights to due process had occurred. Specifically, counsel urged us to find that, since the Administrator did not request, either in the petition or during the hearing, that conditions be imposed upon respondent’s continued practice of law, respondent’s due process rights had been violated. Respondent’s due process violation argument is based upon the fact that since conditions were not requested at any time, he was denied the opportunity to be heard and defend against the imposition or validity of such conditions. We decline to address respondent’s due process argument, as it was not raised in respondent’s brief to this court, and we lack the benefit of a thoroughly researched and analyzed presentation of both sides of this issue. See 
Calloway v. Kinkelaar
, 168 Ill. 2d 312, 329 (1995). We do, however, emphasize that subsection (a) of Rule 758 dictates that in the petition the Administrator must request “a hearing to determine whether the attorney is incapacitated and should be transferred to inactive status pending the removal of the disability, or be permitted to continue to practice law subject to conditions imposed by the court.” 137 Ill. 2d R. 758(a). The Administrator’s adherence to the pleading requirements for Rule 758 petitions contained in subsection (a) will assure that respondents are provided adequate notice of what will be at issue during the proceedings.

In sum, based upon the evidence presented in this case, we find that the placing of conditions at this time upon respondent’s continued practice of law is not warranted. The uncontradicted evidence upon which our decision is based establishes that respondent has regularly attended treatment, has pledged to continue to conform to Dr. Aagesen’s recommendations, and, most significantly, has continued to practice law since 1996 without complaint.

CONCLUSION

For the foregoing reasons, we reject the recommendation of the Review Board and order that the petition filed by the Administrator against respondent be dismissed.

Petition dismissed.

JUSTICE MILLER, dissenting:

Unlike the majority, I believe that appropriate conditions should be imposed on the respondent’s continued practice of law. Accordingly, I dissent.

Although the psychiatric testimony in this case is sharply conflicting on the respondent’s proper diagnosis, there is expert unanimity on one conclusion: that the respondent will require continued psychiatric treatment if he is to be able to practice law in the future. Even the respondent’s treating psychiatrist, Dr. Carl Aagesen, believed that the respondent should remain under psychiatric care if he is to continue in his practice. On this record, then, the majority errs when it determines that no conditions are necessary to ensure that the respondent may continue to practice law without posing any risk to the legal system or to the public at large.

The respondent, in his own testimony before the hearing panel, acknowledged as much. As the Administrator notes in her brief before this court, the respondent testified in the proceedings below that he knows that he suffers from a mental condition that requires medication for its control. He further stated that he intends to follow Dr. Aagesen’s treatment recommendations. Thus, the respondent essentially agrees with the principal condition recommended by both the Hearing Board and the Review Board: that he continue receiving treatment from a qualified mental health professional.

Despite the testimony of the respondent and his psychiatrist, the majority concludes that the imposition of any conditions on the respondent’s continued practice of law is unnecessary. The majority offers no explanation for this decision apart from the singular assertion that“[t]here is insufficient basis to conclude that, despite his assurances to the contrary, respondent will not continue psychiatric treatment and take the prescribed medication.” Slip op. at 16. In essence, even though the respondent’s prior behavior has shown a need for close psychiatric supervision, the majority delegates to the respondent himself the duty to ensure that he will continue to receive the necessary treatment.

The tripartite goals of the attorney disciplinary system are not so easily satisfied. As the majority notes, the purposes of these proceedings are to safeguard the public, maintain the integrity of the legal profession, and protect the administration of justice from reproach. 
In re Smith
, 168 Ill. 2d 269, 295 (1995); 
In re Chandler
, 161 Ill. 2d 459, 472 (1994). Those goals can only be frustrated by today’s result. The evidence in this case demonstrates that the respondent has a lengthy history of mental illness and that he will require continued psychiatric treatment if he is to remain fit to practice law. This court has a duty to the bar and to the general public to ensure the respondent’s continued professional competence. We abdicate those responsibilities, however, when we simply defer to the respondent’s stated intent to continue his psychiatric therapy, without requiring the safeguards recommended by both the Hearing and Review Boards. I do not believe that our authority to impose conditions on an attorney’s continued practice of law extends only to recalcitrant lawyers who deny the need for treatment. That the respondent today vows to continue to see Dr. Aagesen and follow the psychiatrist’s plan of treatment speaks in the respondent’s favor, but it cannot relieve us of our obligation to ensure that the respondent will actually do so.

CHIEF JUSTICE HARRISON joins in this dissent.