(No. 50871.-

*In re* WILLIAM MAULDIN SMITH, Attorney,
Respondent.

*Opinion filed Jan. 26, 1979.—Rehearing denied March 30, 1979.*

WARD, J., took no part.

John C. O'Malley, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Frederick F. Cohn and Sidney S. Altman, of Chicago,

for respondent.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

This is a disciplinary proceeding against the respondent attorney, William Mauldin Smith, pursuant to Supreme Court Rules 751 to 770 (Ill. Rev. Stat. 1977, ch. 110A, pars. 751 to 770) in which both the hearing panel and the Review Board of the Attorney Registration and Disciplinary Commission have recommended that respondent be disbarred because of his conversion of clients' funds. The case is before us on the objections of respondent to the report and recommendations of the Review Board, since "the ultimate responsibility for determining and imposing discipline rests with this court." *In re Wyatt* (1972), 53 Ill. 2d 44, 45.

On February 2, 1977, the Administrator of the Commission filed a three-count complaint against respondent charging him with three separate instances of conversion. Count I concerned respondent's representation of Bennie Smith, a client who retained respondent in June 1972 to represent him in a civil action brought against the city of Chicago and two police officers. A 1974 jury trial of that action resulted in an $8,000 judgment for Bennie Smith. He testified that when advised that the city had two years in which to pay the judgment, he told respondent that he would wait the two years since he would receive interest on the judgment for that period.

Thereafter, however, respondent signed the name "Bennie E. Smith" to an assignment of judgment and sold the $8,000 judgment to a private party for $7,490. The check received in payment was endorsed by respondent "Bennie Smith" and deposited in respondent's account at the Gateway National Bank of Chicago. Respondent subsequently used the funds for his own purposes. Bennie Smith testified that he did not authorize the assignment of

the judgment at a discount, nor was he aware that respondent had done so until almost two years later when he called respondent concerning payment by the city. So far as the record indicates or we have been informed, no part of the judgment proceeds have been paid to Bennie Smith.

Count II concerns respondent's representation of Charles Miller in a 1974 action against his employer for personal injuries received in the course of his employment. After an Industrial Commission hearing, Miller was awarded $750. A check for that amount, made payable to "Charles Miller," was sent by the insurance company to respondent, who endorsed the name "Charles Miller" on the check and deposited it in respondent's account at the Gateway Bank. Again, the proceeds were converted by respondent to his own use. Miller testified that he repeatedly called respondent, who continually denied receiving the money and told Miller he would call him when payment was received. Respondent never accounted for the $750, and the client has received nothing.

Count III of the Administrator's complaint concerns respondent's dealings with Floyd Johnson, who had retained respondent to represent him in a claim arising out of an automobile accident. Respondent negotiated a settlement, without Johnson's authorization or consent, and received a check, dated November 14, 1974, payable to "W. Mauldin Smith & Associates, Ltd. and Floyd Johnson" in the amount of $450. Respondent endorsed Johnson's name on the check, deposited it in respondent's account at the Gateway Bank and used it, too, for his own purposes. Although Johnson testified regarding repeated calls to respondent concerning the case, the client was not told until 1976 that the case had been settled. When he did learn of the settlement and asked for the money, respondent replied that "somebody had cashed the check." As with the other two clients, Johnson has received no part of

the $450.

Respondent's defense was based upon his testimony before the Hearing Board that each of the three clients had signed a power-of-attorney form which authorized respondent to sign the client's name to legal documents, drafts, etc., and that each client had agreed to loan respondent the money received on the judment or settlement of his claim. In support of this contention, respondent produced power-of-attorney forms signed by Bennie Smith and Floyd Johnson. Smith, Miller and Johnson each testified before the Hearing Board that he had never agreed to loan respondent any money. Respondent failed to produce any documentary evidence to support his "loan" theory, he did not describe the amounts and terms of the loans, and he admitted that he did not give a note or other evidence of indebtedness to any of the clients.

As this court stated in a recent disciplinary action, "[t]he findings made in a disciplinary proceeding are entitled to the same weight as the findings of any trier of fact in our judicial system, and the credibility of witnesses is to be determined by the commissioners who hear and observe the witnesses." (*In re Smith* (1976), 63 Ill. 2d 250, 255.) The Hearing Board, the members of which heard the witnesses and observed their demeanor, found respondent's loan testimony to be "incapable of belief." We agree. The only evidence supporting this theory that was introduced at the hearing was the uncorroborated testimony of respondent. In contrast to this was the testimony of Smith, Miller and Johnson, each of whom stated that there was no discussion of a loan nor was any loan agreement, written or oral, entered into. Regardless of whether, as respondent argues, the executed powers of attorney gave him the authority to settle claims on behalf of his clients and endorse and negotiate the checks received, he obviously had no right to convert to his own use the entire proceeds of the checks.

Respondent has urged us to remand this cause for a new hearing, contending that he was not given adequate time to prepare his case and that the Hearing Board erred in denying his requested continuances. The Hearing Board changed the original hearing date from April 27 to May 9 in response to respondent's request for postponement, and we cannot say the Board abused its discretion in denying further continuances where the complaint was served on him on February 10, and the hearing held on May 9. It is desirable and in the public interest that attorney disciplinary proceedings move expeditiously, consistent, of course, with due process requirements.

Respondent suggests that due process may require a bifurcated hearing procedure with separate hearings on "guilt" and "sanctions" instead of the combined hearing system contemplated by our rules and used here. As we understand this argument, the hearing panel would first hear the evidence of misconduct and then recess or adjourn to determine whether the charges had been proved. In the event the charges were found to have been proved, the same panel would then reconvene for the purpose of hearing evidence in mitigation and determining the specific discipline to be recommended. Respondent cites no authority which holds that procedure either necessary or desirable in a professional disciplinary proceeding, and we believe it is not.

One further argument requires discussion. Respondent was represented before the Hearing Board by what apparently was the attorney of his choice. That individual also represented respondent before the Review Board and filed a brief in this court. Oral argument was not requested and the cause was set on the November term calendar for November 15. On November 15 motions for substitution of counsel and oral argument were filed by respondent. The motions were denied on the 16th as to oral argument and allowed as to substitution of counsel, and additional

briefing by substituted counsel was permitted. That brief vigorously attacks the quality of representation afforded respondent by his original counsel. The argument that the representation was so inadequate as to amount to none at all is in part bottomed upon a lack of knowledge of the procedural rules governing disciplinary hearings, including the fact that respondent could be called as an adverse witness. Respondent's attorney had filed an answer to the complaint in which it was alleged that the charged conversions of funds were actually loans to respondent by his clients. No subsequent pleadings were filed by the Administrator, and counsel for respondent was apparently unaware that Commission Rule 5.4 provided: "No reply need be filed by the Administrator. Any new matter alleged in the respondent's answer shall be deemed denied." (Rules of the Attorney Registration and Disciplinary Commission, art. V, R. 5.4, Ill. Rev. Stat. 1975, ch. 110A, following par. 770.) New counsel now argues that, having believed the affirmative loan defense was admitted, original counsel was unprepared to properly cross-examine the three former clients when they denied having ever discussed any loan arangements with respondent. There is, however, another possible explanation of counsel's failure to cross-examine the three witnesses regarding any loan discussions: all of the witnesses had been unequivocal in their denials, and cross-examination might have been more harmful than helpful. Too, we note that Bennie Smith was cross-examined by both respondent and his lawyer with no demonstrable effect upon the integrity of his testimony.

Substituted counsel also focuses upon a statement by the first lawyer made near the conclusion of the testimony before the Hearing Board:

"[Defense counsel]: May I add the nature of these proceedings and my role as colleague? And, I think, I may have mentioned this before, that the early canons of ethics called upon lawyers to help and befriend other

> lawyers, which is precisely what I am doing without any remuneration either in this case or in the early Taylor case; simply because of this duty, and because, apparently, he is not able to obtain any other experienced or competent counsel to represent him.
>
> I am leaving his defense with him, and I am ready to advise him in a guiding capacity on the stand. And the rest of his defense, I depended on him to procure all his own evidence. And I put the burden of responsibility on him to be able to rebut or meet whatever testimony, adverse testimony, would come up. ***"

While the purpose of the quoted statement is unclear to us, a reading of the record does not persuade us that respondent has been unfairly dealt with. There is in this record no indication by respondent of the slightest dissatisfaction with the quality of representation by his lawyer prior to the motion for substitution of counsel filed in this court. It is of primary importance, in considering the argument that a remand for a new hearing is required by reason of the asserted inadequacy of counsel's representation of respondent, that respondent is not unskilled in the law. He is not one, like the usual defendant in a criminal case, who knows little or nothing of the need for investigation, witnesses, proof of mitigating circumstances, and similar matters. He is a licensed lawyer, and his active participation in the hearing, together with his responses to the questions of the hearing panel members, clearly indicate that he was not intimidated by the proceedings. He had known the charges against him for a minimum of some three months prior to the hearings and can scarcely complain of a lack of time to prepare, particularly when he personally knew all that had occurred between him and his clients.

The testimony by the defrauded clients was positive and convincing, and a reading of respondent's testimony simply corroborates the Hearing Board's finding that it is unworthy of belief. In short, there is no reason to believe

that a rehearing would present any different evidence on the merits of the complaints or any different findings by the Board.

As this court stated recently, "[w]hen a lawyer *** converts a client's funds to his own personal use he commits an act involving moral turpitude, and, in the absence of mitigating circumstances, such conversion is a gross violation of the attorney's oath, calling for the attorney's disbarment." (*In re Stillo* (1977), 68 Ill. 2d 49, 54.) In fact this court has even disbarred an attorney for an isolated act of conversion. (See cases cited in *In re Fumo* (1961), 22 Ill. 2d 429, 431.) Considering that respondent has been guilty of three independent acts of conversion and long-continuing false representations to his clients, together with the absence of candor, remorse, or attempts at restitution, a proper sense of concern for the protection of the public requires respondent's disbarment.

It is so ordered.

*Respondent disbarred.*

MR. JUSTICE WARD took no part in the consideration or decision of this case.