(No. 65685.—

*In re* LEO I. FOX, Attorney, Respondent.

*Opinion filed April 25, 1988.—Rehearing*
*denied May 31, 1988.*

Samuel J. Manella, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

George P. Lynch and Leland Shalgos, of Chicago, for respondent.

JUSTICE CUNNINGHAM delivered the opinion of the court:

On January 27, 1986, the Administrator of the Attorney Registration and Disciplinary Commission filed a three-count complaint against respondent, Leo I. Fox, alleging that he had (a) neglected legal matters entrusted to him in violation of Rule 6—101(a)(3) of the Code of Professional Responsibility (Code) (107 Ill. 2d R. 6—101(a)(3)); (b) failed to seek the lawful objective of his clients in violation of Rule 7—101(a)(1) of the Code (107 Ill. 2d R. 7—101(a)(1)); (c) failed to carry out contracts of employment in violation of Rule 7—101(a)(2) of the Code (107 Ill. 2d R. 7—101(a)(2)); and (d) prejudiced or damaged his client during the course of professional relationships in violation of Rule 7—101(a)(3) of the Code (107 Ill. 2d R. 7—101(a)(3)). The asserted misconduct involved respondent's alleged failure to properly prosecute crimi-

nal appeals for three clients who had paid him retainers, Derrick Dandridge, Carlos Moore, and Lorenzo Wiley.

Respondent was admitted to practice law in May 1961, and is currently 60 years old. For the past 20 years he has been a sole practitioner, and approximately 95% of his practice has been criminal law. He has not previously been disciplined for professional misconduct.

On September 16, 1986, a hearing was held. The Hearing Board found respondent guilty on all counts and recommended that he be censured. On December 23, 1986, the Administrator filed before the Review Board exceptions to the discipline recommended by the Hearing Board, and requested that respondent be suspended from the practice of law for three years.

On July 28, 1987, the Review Board filed its report and recommendations. The Review Board concurred with the findings of fact and conclusions of law of the Hearing Board. However, a majority of the Review Board recommended that respondent be suspended for a period of 18 months. Two members of the Review Board recommended that respondent be suspended from the practice of law for one year.

This matter is before this court upon the exceptions filed by respondent to the discipline recommended by the Review Board.

Count I, the allegations of which we herein summarize, involves respondent's work on behalf of Derrick Dandridge. Dandridge was convicted on or about December 28, 1979, of two counts of armed robbery and was sentenced to imprisonment for 10 to 20 years. On or about December 1, 1980, respondent was retained to prosecute his appeal and was paid $3,000 as his fee. On December 19, 1980, the appellate court allowed respondent's motion to file his appearance for Dandridge. On April 9, 1981, Dandridge's appeal was dismissed for want of prosecution. On January 5, 1983, Dandridge was

released from prison. At no time between the dismissal of the appeal and the defendant's release from prison did respondent take any action to reinstate his client's appeal.

Respondent candidly admits the allegations regarding count I. However, he urges us to consider additional facts in order to view his conduct in its proper context. In this regard he submits that during the Dandridge appeal he was suffering from certain physical problems, primarily a heart condition that had recently become aggravated. He also notes that, at about the same time, he was going through a dissolution of a marriage of 20 years' duration and involving three children. Respondent also points out that his practice was then in the midst of upheaval in that an association he had with other attorneys was breaking up. Respondent claims he simply lost the Dandridge file at the time he was moving the location of his practice. He submits that the file was inadvertently closed, and that therefore he did not complete his obligation on it. Respondent points out that as soon as he learned that his client, Dandridge, was about to be released from prison and the appeal had been dismissed, he offered to reimburse the Dandridge family for all the legal fees which the family had paid to him. Respondent also notes the undisputed fact that he voluntarily returned $3,100 to the Dandridge family, which is the amount that his records reflected he had collected, and which is $100 more than the Dandridge family claimed that they had paid respondent.

We next summarize the allegations of count II, which concern the manner in which respondent handled the criminal appeal of Carlos Moore. Respondent had represented Moore at his murder trial. Moore had been convicted and sentenced to 80 years in the penitentiary. Respondent agreed to prosecute Moore's appeal for $1,500, and Moore paid him a $300 retainer. On June 2, 1980,

respondent filed a notice of appeal on behalf of Moore, and the clerk of the appellate court docketed the matter. Pursuant to Supreme Court Rule 606(g) (107 Ill. 2d R. 606(g)), respondent was to file a docketing statement in the case by June 16, 1980. Respondent failed to file the docketing statement despite written notice that his failure would result in dismissal, and the case was dismissed on July 22, 1980, for want of prosecution.

The allegations of count III concern the manner in which respondent handled the appeal of a codefendant of Carlos Moore, Lorenzo Wiley. At trial respondent had represented Wiley along with Moore, and Wiley had been given the identical sentence imposed upon Moore. On August 8, 1980 (after the appellate defender withdrew from Wiley's appeal), respondent was appointed to handle the appeal. He was paid his fee of $1,500 in one sum, which he has not refunded.

As of May 22, 1981, respondent had failed to file Wiley's appellate brief, and the appellee filed a motion to show cause. Subsequently, respondent moved to adopt as Wiley's brief the brief of a third codefendant. Respondent's motion was granted and the motion to show cause was dismissed. Respondent then moved for a continuance of the date set for oral argument. The motion was denied and respondent failed to appear for oral argument. Wiley's conviction was affirmed.

Respondent did not contest the key allegations of counts II and III but sought instead to explain the reasons for his deficiencies and to establish that neither Moore nor Wiley had been prejudiced. He stated that he did all of the work essential to protect the rights of Moore and Wiley, thereby giving them at least their money's worth. He also indicated that he was quite familiar with all of the legal issues pertinent to the appeals. With respect to his failure to appear for oral argument in the Wiley case, he explained that on that date

he had a long-standing commitment to another client in Virginia. With respect to his decision to adopt another defendant's brief as Wiley's brief, he explained that he reached that decision only after doing extensive research and reviewing the trial transcripts.

In addition to offering the above-stated explanations for his conduct and his assessment of the seriousness (or lack of seriousness) of the offenses, respondent also presented character witnesses. These witnesses are attorneys who practice criminal law in Cook County and know of respondent's reputation for conscientious professionalism and integrity. Also, 12 judges of the circuit court of Cook County, criminal division, signed an affidavit on respondent's behalf regarding respondent's good reputation within the legal community as a hard-working, diligent, highly moral, honest and dedicated working attorney who is scrupulously conscientious.

The Hearing Board found that the Administrator had proven the allegations of counts I, II and III (allegations which were largely uncontested) and concluded that discipline should be imposed. However, the Hearing Board felt it would be unfair to fail to consider the unusual stressful events that were occurring in respondent's personal and professional life at the time these allegations arose. The Hearing Board was of the opinion that the proven allegations represented an aberration in respondent's professional life. The Hearing Board stated that it did not in any way take lightly the allegations proved by the Administrator and believed them to be serious. Nevertheless, the Hearing Board (unlike the Review Board) rejected the Administrator's contention that respondent should be suspended.

We accept the factual findings of the Hearing Board regarding proof of the allegations. These factual findings, in which the Review Board concurred, are fully supported by the record. Moreover, factual findings

made in a disciplinary proceeding are entitled to substantially the same weight as the findings of any trier of fact in our justice system. (*In re Bossov* (1975), 60 Ill. 2d 439.) However, with respect to whether and to what extent discipline is to be imposed, the recommendations of the Hearing Board and Review Board are advisory which this court is not required to adopt. *In re Hopper* (1981), 85 Ill. 2d 318, 323.

The traditional high standards of the legal profession impose upon an attorney the duty to represent a client with zeal and diligence. (*In re Chapman* (1978), 69 Ill. 2d 494.) By neglecting the criminal appeals of three clients, respondent failed to adhere to this standard. Culpable neglect of a client's affairs is misconduct sufficient to warrant a disciplinary sanction of suspension. (See, *e.g.*, *In re Chapman* (1983), 95 Ill. 2d 484; *In re Levin* (1979), 77 Ill. 2d 205.) Discipline certainly must be imposed in the instant case.

In determining the appropriate discipline, we have considered both the gravity of the offenses and the weakness of some of respondent's asserted mitigating considerations.

One of the mitigating considerations which respondent has emphasized is the stress which he was under when his offenses occurred. However, respondent's self-serving and uncorroborated claim that he was under stress does not convince this court that stress accounts for his misconduct. Moreover, stress is a part of the practice of law and does not excuse misconduct. See *In re Smith* (1976), 63 Ill. 2d 250.

As an experienced criminal defense attorney, respondent failed to properly represent his clients. Because respondent's misconduct caused his clients to lose constitutional rights afforded them as accuseds in criminal cases, greater discipline is warranted. A client's loss of his constitutional right to an appeal is less susceptible to mone-

tary valuation or remedy than the loss of a civil suit for damages, and more severe discipline is appropriate to deter neglect in criminal cases than in civil cases. *In re Hall* (1983), 95 Ill. 2d 371, 375.

Respondent's misconduct is aggravated by his actions subsequent to the neglect of each criminal appeal. Respondent misrepresented to members of Dandridge's family that a brief had been filed on Dandridge's behalf when, in fact, a brief had not been filed. Further, while respondent returned the $3,100 to Dandridge, he did so only after Dandridge filed a complaint with the Commission. From a review of the sequence of events set forth in the record it appears that respondent should have more promptly sought to make restitution with the Dandridge family. Also, there appears little reason why he has not refunded at least part of his $1,500 fee for the Wiley appeal, which he handled so poorly. Settlement with a client does not preclude inquiry into the moral and professional qualities of an attorney's acts prior to settlement and in connection therewith (*In re Rosenberg* (1953), 413 Ill. 567), but a failure to promptly attempt to make restitution of funds wrongfully retained generally does not enhance the confidence which the public and this court place in that attorney.

The purpose of imposing discipline against an attorney for professional misconduct is not to punish the attorney. Rather, the purpose is to protect the public, to maintain the integrity of the profession and to protect the administration of justice from reproach. (*In re Heirich* (1956), 10 Ill. 2d 357; *In re Lacob* (1972), 50 Ill. 2d 277.) Although we agree with the Hearing and Review Boards' conclusions that respondent's misconduct is grave, we cannot agree with the Hearing Board's conclusion that a censure is adequate discipline. Rather, considering the gravity of the offense, we are convinced that the 18-month suspension which the Review Board recom-

mended is a reasonable means of meeting the above-stated objectives of attorney discipline.

Respondent's misconduct fully justifies his suspension for 18 months, and an 18-month suspension is hereby ordered.

*Respondent suspended.*