(No. 93178.—

*In re* LEONARD THOMAS TIMPONE, Attorney, Respondent.

*Opinion filed January 23, 2004.*

FITZGERALD, J., took no part.
GARMAN, J., joined by THOMAS, J., dissenting.

Steven R. Splitt, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Michael Lee Tinaglia, of Chicago, for respondent.

JUSTICE FREEMAN delivered the opinion of the court:

Respondent, Leonard Thomas Timpone, was charged with various violations of the Rules of Professional Conduct (Rules) (134 Ill. 2d R. 1.1 *et seq.*) in a three-count complaint filed by the Administrator of the Attorney Registration and Disciplinary Commission (ARDC). The Hearing Board found that the Administrator established that respondent: (1) entered into a business transaction with a client without making proper disclosures; (2) converted and commingled funds belonging to another client; and (3) engaged in conduct involving fraud, dishonesty, deceit or misrepresentation. The Hearing Board recommended disbarment as a sanction.

The Review Board affirmed those findings and rejected respondent's plea for a lesser sanction. The matter is now before this court on respondent's exceptions to the findings and conclusions of the Review Board.

## I. BACKGROUND

Respondent has been licensed to practice law since 1970. In 1993, we suspended him for three years. See *In re Timpone*, 157 Ill. 2d 178 (1993). The charges in the matter before us now are based on transactions involving two clients, Richard Rzewnicki and Fulton Purnell. We will discuss the facts relating to each client in turn.

### A. The Rzewnicki Transactions

In count I of the complaint the Administrator alleged that respondent engaged in several ethical violations arising from a loan transaction between respondent and Rzewnicki. Among other things, the Administrator alleged that respondent: (1) engaged in conduct involving fraud, dishonesty, deceit, or misrepresentation (134 Ill. 2d R. 8.4(a)(4)); (2) entered into a business transaction with a client without making proper disclosures where the lawyer and client have conflicting interests and the client expects the lawyer to exercise his professional judgment on the client's behalf (134 Ill. 2d R. 1.8); and (3) engaged in conduct "which tends to defeat the administration of justice or to bring the courts or the legal profession into disrepute" in violation of Supreme Court Rule 771 (134 Ill. 2d R. 771).

Respondent represented Rzewnicki in a dissolution of marriage proceeding from 1980 through 1983 and assisted him in the sale of his marital residence in 1987 and 1988. Respondent performed no further legal work for Rzewnicki until 1992, when he defended Rzewnicki on a DUI charge and a building code violation.

Approximately two months after the sale of the marital residence, Rzewnicki loaned respondent $35,000

from the proceeds of the sale. The loan was never repaid, and in January 1999, Rzewnicki obtained a default judgment against respondent. The judgment remains unsatisfied.

Rzewnicki claimed that he loaned the money to respondent because he trusted respondent as "his lawyer," and because he was told he would receive a good return. However, in a pretrial deposition, Rzewnicki described the services respondent performed for him in December of 1988 by testifying that he was an "ex-client" and that "[he] had nothing binding at that time."

Respondent argued before the Hearing Board that he and Rzewnicki did not have an attorney-client relationship at the time in question, and that the loan agreement arose out of their friendship rather than the relationship of attorney and client. Therefore, although a debtor-creditor relationship existed with Rzewnicki, his receipt of the loan did not violate any of the provisions of the Rules. The Hearing Board disagreed.

Relying on the reasoning in *In re Imming*, 131 Ill. 2d 239 (1989), the Hearing Board found that respondent and Rzewnicki had an attorney-client relationship at the time of the loan. The Hearing Board also found that respondent violated his fiduciary duty to his client by, among other things: (1) failing to advise Rzewnicki that there were limits on the types of transactions an attorney could enter into with a client; (2) failing to advise him to consult independent counsel before making the loan; and (3) providing no collateral for the loan and giving Rzewnicki no promissory note evidencing the loan or the interest rate until five years after the transaction. The Review Board noted that respondent did not challenge any of the factual findings of the Hearing Board and affirmed all of those findings.

## B. The Purnell Transactions

Counts II and III of the Administrator's complaint

involve respondent's representation of Fulton Purnell and statements made to the ARDC regarding that representation. In count II, the Administrator alleged that respondent: (1) converted his client's funds; (2) failed to hold his client's property separate from his own (134 Ill. 2d R. 1.15(a)); and (3) failed to promptly deliver funds to a client (134 Ill. 2d R. 1.15(b)). In count III, the Administrator alleged that respondent: (1) made a statement of material fact known by the lawyer to be false in connection with a lawyer disciplinary matter (134 Ill. 2d R. 8.1(a)(1)); and (2) induced another to engage in conduct when the lawyer knows that the conduct will violate the Rules of Professional Conduct (134 Ill. 2d R. 8.4(a)(4)). Regarding both counts II and III, the Administrator alleged that respondent engaged in conduct involving fraud, dishonesty, deceit, or misrepresentation, in violation of Rule 8.4(a)(4), and also engaged in conduct "which tends to defeat the administration of justice or to bring the courts or the legal profession into disrepute" in violation of Supreme Court Rule 771. The Hearing Board's findings on these allegations are not challenged by respondent.

Fulton Purnell engaged respondent to represent him in a proceeding to set aside a judgment-by-confession taken against him by Leo Hickman. He was referred to respondent by a mutual friend, John Jordan, who had been represented in the past by respondent.

According to respondent, he expended considerable time and effort in his attempt to set aside the Hickman judgment-by-confession. In September, 1998, respondent received a check for $23,448.94 made out to Purnell in settlement of the Hickman case. This check was deposited in respondent's client fees account on September 21, 1998. The check was endorsed, "Fulton Purnell Pay to Leonard Timpone." The handwriting was identified by respondent's associate, Gail Golub, as that of Gina Biers, respondent's secretary.

Respondent did not have a trust account at the time he deposited Purnell's check. He maintained a client fees account and an operating account at the same bank and money would be transferred from the fees account to the operating account as checks were written on the operating account. Respondent's firm did not have a client trust account until 1999.

Respondent testified that he, Jordan, and Purnell had a three-way telephone conversation in the early fall of 1998, at the time of a visit by Purnell to Jordan's home. According to respondent, Purnell authorized him to sign his name to the settlement check and deduct his fee. This account was confirmed by Jordan, but denied by Purnell. Purnell denied ever having a three-way telephone conversation with respondent and Jordan and denied authorizing respondent to sign his name to the check and deduct his fees.

In September 1998, Purnell received a letter from respondent enclosing a check for $10,742.19. The letter stated that he had received $23,448.94 in the Hickman matter and had deducted the balance of almost $12,000 in attorney fees.

Before Purnell cashed the $10,742.19 check from respondent, the balance in respondent's client fees account fell under $10,000 on at least three occasions. Respondent denied using Purnell's funds for his own purposes.

In early November 1998, respondent received a letter from the ARDC, requesting a response to allegations raised by Purnell as to the handling of the Hickman settlement check. At respondent's direction, Golub wrote to the Administrator's counsel on his behalf, stating, "As for Mr. Purnell's settlement of funds, the entirety of the settlement remains in our client trust account." On January 6, 1999, also at respondent's direction, Golub again wrote to the Administrator's counsel, advising, "As

I stated in an earlier letter to your office, however, the entirety of the [Hickman settlement] check remains in our client fees account."

Based on this testimony, the Hearing Board found that respondent had converted Purnell's funds, as charged in the complaint. The Board, citing *In re Clayter*, 78 Ill. 2d 276, 282 (1980), noted that a conversion occurs anytime an account holding funds on behalf of a client drops below the sums due the client, even if the drop in the balance happens inadvertently. The Hearing Board also found Purnell's testimony that he never gave respondent authority to negotiate the settlement check more credible than the version of events given by respondent. The Board similarly found that respondent failed to hold property of a client separate from his own property in violation of Rule 1.15(a).

The Hearing Board likewise found that respondent violated Rule 1.15(b) by failing to promptly deliver to Purnell funds that Purnell was entitled to receive. The Board found that he was not entitled to deduct those funds from the Hickman settlement proceeds without a fee agreement, regardless of whether he was still owed fees for the completed work. Without an agreement, respondent had engaged in conduct involving fraud, dishonesty, deceit, or misrepresentation and conduct "which tends to defeat the administration of justice or bring the courts or the legal profession into disrepute." 134 Ill. 2d R. 771. The Hearing Board also noted that, although respondent was censured in 1994 for failure to timely file a tax return, he had not yet filed a return for 1998.

As to count III, the Hearing Board found that the charged conduct had been proved because the two letters in response to the ARDC inquiry, prepared at the direction and with the approval of respondent, contained false statements known by him to be false. He did not have a

client trust account, as stated in the first letter, and the "entirety" of Purnell's settlement check did not remain in his account, as stated in the second letter.

Respondent did not challenge any of these findings and conclusions in his exceptions to the Hearing Board's recommendations. The findings were, accordingly, affirmed by the Review Board. The Boards' findings as to the allegations in counts II and III are likewise not challenged in this court.

### C. Evidence in Aggravation and Mitigation

The Hearing Board noted that respondent had been disciplined on two prior occasions. This court suspended him for three years in 1993 for misconduct including conversion and commingling of client funds, failing to maintain complete records of client funds, neglecting client cases, hiding assets from the court, and misrepresenting a matter to the ARDC. *In re Timpone*, 157 Ill. 2d 178 (1993). In 1994, he was censured for failure to timely file tax returns for the years 1984 through 1988. *In re Timpone*, M.R. 9862 (March 30, 1994). Relying on *In re Levin*, 101 Ill. 2d 535, 541-42 (1984), the Hearing Board considered the similarities between respondent's prior and current misconduct and the length of time between the prior and current acts.

The Hearing Board also considered in aggravation the fact that respondent never repaid the loan to Rzewnicki, despite the fact that he earned significant income in the years between the loan in 1988 and his suspension in 1993. Relying on *In re Smith*, 75 Ill. 2d 134, 142 (1979), the Hearing Board found respondent's lack of candor and remorse to be an aggravating factor. The Board noted that throughout the course of the disciplinary hearing, respondent justified and minimized his actions rather than accepting responsibility for them.

In mitigation, respondent testified that he engaged in community service work and that he took cases for people

who could not pay his fees. He also stated that he had "learned his lesson" from failing to document his transactions with Purnell. Golub testified that at the time of the disciplinary hearing, respondent's firm had one "official" *pro bono* case and 10 to 20 "unofficial" *pro bono* cases where the firm was working for reduced rates in order to provide low-income people with representation in domestic relations cases. The Hearing Board found this testimony to be essentially self-serving and insufficient to warrant substantial consideration as evidence in mitigation. The Hearing Board recommended disbarment.

Before the Review Board, respondent challenged the disbarment recommendation on the ground that the Hearing Board overemphasized the prior discipline. The Review Board rejected that argument, observing that the type of misconduct proved in this case is serious and, in the absence of any aggravating or mitigating factors, would likely warrant a sanction ranging from a lengthy suspension to disbarment. The Review Board concluded that the timing of the present misconduct, occurring on the heels of the prior suspension, respondent's lack of candor or remorse, and his continued tax violations despite prior discipline indicate that a lengthy suspension would not induce respondent to rehabilitate himself. Therefore, the Review Board affirmed the findings and conclusions of the Hearing Board and recommended disbarment.

Before this court, respondent argues that the Rzewnicki transaction should not be considered because an attorney-client relationship did not exist at the time of the loan. He also argues that a lengthy suspension would be the appropriate sanction for the Purnell transaction.

## II. ANALYSIS

The rules controlling our review of the reports and recommendations of both the Hearing Board and the

Review Board are well established. The Administrator bears the burden of proving the allegations contained within the complaint by clear and convincing evidence. 137 Ill. 2d R. 758(b); 166 Ill. 2d R. 753(c)(6). Moreover, the findings of fact made by the Hearing Board are to be treated virtually the same as the findings of any initial trier of fact. *In re Parker*, 149 Ill. 2d 222, 233 (1992). Deference is to be accorded to the factual findings of the Hearing Board because the Hearing Board is in a position to observe the witnesses' demeanor, judge their credibility, and resolve conflicting testimony. *In re Spak*, 188 Ill. 2d 53, 66 (1999). Accordingly, this court will generally not disturb the Board's factual findings unless they are against the manifest weight of the evidence. *In re Ushijima*, 119 Ill. 2d 51, 56-57 (1987). We are not, however, bound by the disciplinary recommendations of either the Hearing Board or the Review Board because those recommendations are advisory and the ultimate responsibility for imposing discipline rests with this court. *In re Eckberg*, 192 Ill. 2d 70, 85 (2000); *In re Howard*, 188 Ill. 2d 423, 434 (1999).

A. Count I: Improper Business Transaction

Respondent submits that the conclusion of the Hearing Board, as affirmed by the Reviewing Board, *i.e.*, that an attorney-client relationship existed at the time of the loans, was against the manifest weight of the evidence. Respondent notes that the Hearing Board expressly stated that "no violation of attorney disciplinary rules would be at issue here if respondent entered into a business transaction with Rzewnicki based upon Rzewnicki's personal friendship with respondent rather than the attorney-client relationship." Thus, if the Hearing Board's determination that an attorney-client relationship existed at the time of the loan transaction is against the manifest weight of the evidence, the Rule violations alleged in count I of the complaint were not proved. See *In re Smith*, 168 Ill. 2d 269, 283 (1995).

The Administrator, citing Attorney Registration and Disciplinary Commission Rule 302(f)(5), initially asserts that respondent's argument concerning the existence of an attorney-client relationship has been waived since it was not expressly argued before the Review Board. Rule 302(f)(5) is similar to Supreme Court Rule 341(e)(7) (177 Ill 2d R. 341(e)(7)), providing that the appellant's brief to the Review Board must include a section entitled "Argument," containing the contentions of the party and the reasons therefor, and warns that points not argued are waived. In his brief before the Review Board, respondent essentially contended that the Hearing Board had overemphasized respondent's prior discipline and argued that a suspension, rather than disbarment, would be the appropriate sanction. According to the Administrator, respondent's brief contained no specific argument that the Hearing Board erred in finding that an attorney-client relationship existed between respondent and Rzewnicki.

Respondent's brief before the Review Board did, however, contain the following contentions:

"Thus we emphasize the following evidentiary facts, as reported by the hearing Board:

1. Though Leonard had represented Richard Rzewnicki before and after his marital home was sold, he did not represent him when the home was sold in late 1988.

2. Leonard did not represent Rzewnicki in any pending legal matter when Rzewnicki loaned him money, which derived from the sale of the home."

Respondent argued before the Review Board that Rzewnicki described himself as an ex-client at the time the loan was made, and pointed out that there was a gap of over four years between the time respondent completed the post-decree work in 1988 and his representation of Rzewnicki on the DUI and building code violation cases in 1992-93. Thus, although not precisely characterized as a point relied on for reversal, it is clear that respondent disputed the Hearing Board's analysis and conclusion

that the loan occurred during the attorney-client relationship.

It is well established that the rule of waiver is a limitation on parties and not on reviewing courts. *Welch v. Johnson*, 147 Ill. 2d 40, 48 (1992). To reach a just result, this court may override considerations of waiver and consider a point not raised below. *Welch*, 147 Ill. 2d at 48. Under the circumstances presented by the record in this case, we decline to apply waiver and will consider respondent's argument on its merits.

Turning to the merits of the argument, the Hearing Board found that respondent was not performing any legal services for Rzewnicki at the exact time the loan transaction took place. However, this court has established that, while an attorney's relation to a client generally ceases on completion and satisfaction of the matter the attorney was employed to conduct, special circumstances or arrangements may show a continuation of the relationship. *Imming*, 131 Ill. 2d at 252. The Hearing Board found that such special circumstances existed here. The Review Board affirmed this finding.

The special circumstances found by the Hearing Board in this case were as follows: (1) Rzewnicki stated emphatically and without hesitation that he considered respondent to be his lawyer, not his friend; (2) the loan transaction took place, upon the request of respondent, within weeks of respondent's completion of work on a post-decree matter that generated the funds; and (3) Rzewnicki testified that the funds loaned to respondent were generated by the work respondent performed on his behalf.

The Hearing Board found the relationship of Rzewnicki and respondent to be analogous to the eight creditors and the attorney disciplined in *Imming*. In that case, the respondent was disciplined for breach of his fiduciary duties to eight investors who were, at the time of the investments, either clients or former clients. *Imming*,

131 Ill. 2d at 253. The *Imming* court held that the Hearing Board could reasonably have concluded that in the case of four of the investors, the funds in question were the product of respondent's legal work that was concluded so close in time to the legal services rendered as to induce the client to believe that respondent's business transactions were a continuation of the attorney-client relationship. *Imming*, 131 Ill. 2d at 254. In the case of the other four investors, respondent was performing legal services for them at the time of the loan or shortly afterward. *Imming*, 131 Ill. 2d at 253.

While we believe that some differences exist between the facts of the present case and the facts in *Imming*, we do not believe those differences compel a conclusion opposite to that made by the Hearing Board. We further acknowledge that Rzewnicki's sworn testimony was at odds with his deposition. However, credibility determinations rest with the Hearing Board. We cannot say that the findings made by the Hearing Board were against the manifest weight of the evidence. We therefore affirm the findings made by the Hearing Board with respect to the Rzewnicki transactions.

## B. Appropriate Sanction

As previously noted, respondent does not challenge the boards' factual findings as to the allegations in counts II and III. We therefore turn to the issue of the appropriate discipline to be imposed in this case. Supreme Court Rule 771 addresses the types of discipline attorneys may be subjected to in Illinois. 134 Ill. 2d R. 771. The sanctions range from the severest, disbarment, to the most lenient, reprimand. See 134 Ill. 2d R. 771.

Respondent argues that suspension, not disbarment, is the appropriate sanction for his misconduct. Although we agree that disbarment is not appropriate in this case, we disagree that a mere suspension in justified under the facts.

This court has described disbarment as "the utter destruction of an attorney's professional life, his character and his livelihood and therefore a court should use disbarment in moderation." *In re Yamaguchi*, 118 Ill. 2d 417, 428-29 (1987).

Initially, we note that this court has imposed a lesser sanction than disbarment in cases involving transactions similar to those in the case before us. In *Imming*, discussed earlier, a two-year suspension was imposed for improper business transactions with clients. *Imming*, 131 Ill. 2d at 261. Similarly, a two-year suspension was imposed for similar misconduct in *In re Rosin*, 118 Ill. 2d 365 (1987). In *In re Joyce*, 133 Ill. 2d 16, 32 (1989), we likewise imposed a two-year suspension for commingling and conversion of client funds. In respondent's earlier disciplinary matter, we imposed a three-year suspension for similar misconduct involving six different clients. *Timpone*, 157 Ill. 2d at 200.

The Review Board noted that the type of conduct at issue in this case likely warrants a sanction ranging from a lengthy suspension to disbarment. Of these cases cited by the Review Board in its written decision, we find distinguishable those where disbarment was ordered. In each of those cases, certain aggravation existed which is notably absent in the case at bar. See *In re Feldman*, 89 Ill. 2d 7 (1982) (ordering disbarment for intentional misconduct, including converting a client's funds then wrongfully signing another client's name on checks to cover up the first conversion); *In re Stillo*, 68 Ill. 2d 49 (1977) (ordering disbarment for breach of attorney-client relationship to obtain loan from client which was never repaid in addition to settling a case without the client's consent, and converting client funds).

The Administrator argues that our holding in *In re Blank*, 145 Ill. 2d 534 (1991), strongly supports the boards' recommendations. In that case, the respondent

was found to have neglected three clients' cases, engaged in dishonesty, and converted funds on two occasions when he allowed his trust account balance to fall to zero while he was supposed to be holding money for a medical provider. The Hearing Board and the Review Board recommended a two-year suspension. *Blank,* 145 Ill. 2d at 537. This court imposed disbarment, citing the gravity of the misconduct and respondent's recidivism. *Blank,* 145 Ill. 2d at 554-55.

We agree with the Administrator that respondent's recidivism is a factor that cannot be ignored in this case. However, in *In re Howard,* 188 Ill. 2d 423 (1999), we imposed a two-year suspension on a lawyer who had been reprimanded for neglecting criminal cases, who was later suspended for two additional years for misconduct including conversion of client funds, and whose name had been stricken from the roll of attorneys practicing before the Seventh Circuit Court of Appeals. Despite his suspension, he continued to practice law and submitted false information to an Alaskan court where he applied for admission *pro hac vice.* Noting our holding in *Yamaguchi,* the majority found disbarment unwarranted, in part because corrupt motives and moral turpitude were not clearly shown. *Howard,* 188 Ill. 2d at 441-42.

This court has held that in determining the quantum of discipline the court will mete out, "the degree of punishment imposed in a disciplinary proceeding is based upon an evaluation of the evidence, the respondent's past record, his attitude at the disciplinary proceeding, and the best interests of society." *Imming,* 131 Ill. 2d at 260. We have also repeatedly stressed that where corrupt motives and moral turpitude are not clearly shown, the proper punishment is suspension rather than disbarment. *In re Chapman,* 69 Ill. 2d 494, 501 (1978). Taking into account respondent's recidivism, we cannot say that a "suspension for a specified period of time" (134 Ill. 2d

R. 771(d)), however lengthy, as respondent suggests, is appropriate. Respondent does not appear to have grasped the importance of his ethical obligations, particularly when his friends are his clients. For this reason, we believe that a "suspension for a specified period *and until further order of court*" (emphasis added) (134 Ill. 2d R. 771(c)) serves the purpose of our disciplinary processes. We stress that, after disbarment, this sanction is the most severe that we can impose on an attorney. In our view, the "until further order of court" portion of the discipline reflects our agreement with the Administrator that respondent's recidivism warrants more than mere suspension.

Finally, we feel compelled to address several points raised in dissent. The dissent accuses us of failing to sanction the misconduct at issue in this case consistently with the sanctions imposed in other cases involving similar misconduct. The dissent also criticizes us for failing to take into account respondent's recidivism. With respect to the cases involving similar misconduct, the dissent states that we distinguish two cases, *In re Stillo* and *In re Feldman*, whereas the dissenting justices believe that no meaningful distinction exists between those cases and the case at bar. With respect to *Stillo*, the dissent states that it is "difficult to discern what aggravating factor was present [there] that is 'notably absent' [here] except perhaps, for Stillo's accepting a settlement offer without prior authorization from his client." 208 Ill. 2d at 392-93 (Garman, J., dissenting, joined by Thomas, J.). Accepting a settlement offer without client consent is a serious ethical lapse and would be further aggravation to the misconduct that was charged here. We believe that the absence of such misconduct here makes this case distinguishable from *Stillo*. With respect to *Feldman*, the dissent fails to note that at least nine check forgeries were also at issue there. Fortunately,

the misconduct here, although similar, does not rise to that level. We therefore respectfully disagree that "there is no meaningful distinction to be made between *Stillo, Feldman,* and the present case and the same sanction—disbarment—should be imposed." 208 Ill. 2d at 393-94 (Garman, J., dissenting, joined by Thomas, J.). Discipline cases must be judged on their facts, and while the discipline imposed from case to case should be consistent, we must take into account the factual differences that do exist from case to case. In our view, the factual differences between these two cases and the case at bar compel the conclusion that the discipline imposed here need not be similar.

As for the other cases involving similar misconduct, we note that the suspension ordered in *In re Rosin* was for a two-year period. The suspension ordered here, 42 months, is nearly twice as long in duration. The same can be said for *In re Joyce,* where another two-year suspension was imposed. Clearly, standing alone, the misconduct at issue here does not, in normal circumstances, warrant disbarment. However, this case is not normal in that respondent has had disciplinary action taken against him before, as the dissent correctly notes. Our decision to add the "until further order of court" language to the suspension belies the dissent's belief that we have failed to take into account respondent's recidivism. We have considered the recidivism and have decided to suspend respondent, not only for a period of time nearly double in length that had been imposed in similar cases, but also until further order of court.

The dissent takes issue with our decision to suspend respondent for a specified period of time and until further order of the court, intimating that the sanction does not give "sufficient attention to our responsibility to protect the public from respondent's habitual misconduct or to protect the integrity of the profession." 208 Ill. 2d at 390

(Garman, J., dissenting, joined by Thomas, J.). The dissent suggests that its preferred sanction, disbarment, would accomplish those goals.

As noted earlier in this opinion, Supreme Court Rule 771 lists the various forms of discipline that are at this court's disposal. A popular misconception regarding disbarment in this state is that a disbarred lawyer will never be allowed to practice law in Illinois again. This is not true. Supreme Court Rule 767 provides that

> "[a]n attorney who has been disbarred *** or suspended until further order of the court may file his verified petition with the clerk of the court seeking to be reinstated to the roll of attorneys admitted to practice law in this State." 134 Ill. 2d R. 767.

Thus, attorneys who are disbarred may seek reinstatement just as those who are suspended until further order of court. In both cases, the disciplined attorney must seek a court order before he or she will be allowed to practice. In the case of a disbarred attorney, he or she must wait until five years after the date of disbarment before seeking reinstatement. 166 Ill. 2d R. 767. In the case of the suspended attorney, he or she may not seek reinstatement until the period of suspension has passed. Critically, both forms of discipline share a common characteristic, *i.e.*, in order to practice again, the disciplined attorney must first seek an order of this court to do so.

In light of the foregoing, it is difficult to accept the dissent's position that the discipline we impose upon respondent somehow fails to "protect the public from respondent's habitual misconduct or to protect the integrity of the profession." The public is no more protected under the type of discipline the dissent would impose upon respondent than the sanction that we have chosen to impose today. Likewise, the integrity of the profession is no less protected under our sanction. The only practical difference between the two forms of

discipline is that under the dissent's position, respondent would be ineligible to seek reinstatement for approximately one year longer than under ours. Given the fact that respondent will not practice until this court allows him to do so, this difference is, in our view, negligible. As the dissent itself acknowledges, "our goal [in such cases] is not to punish the attorney." *Howard*, 188 Ill. 2d at 434. We have previously noted that disbarment is a form of discipline that should be used in moderation. The sanction we impose today reflects our recognition of that fact while remaining faithful to the goals of attorney discipline that this court has developed over the years.

### III. CONCLUSION

Respondent Leonard Thomas Timpone is suspended from the practice of law for 42 months and until the further order of this court, effective March 26, 2001, the date of his interim suspension pursuant to Supreme Court Rule 774.

*Respondent suspended.*

JUSTICE FITZGERALD took no part in the consideration or decision of this case.

JUSTICE GARMAN, dissenting:

I agree with the majority that, given the deference that must be afforded to the Hearing Board as the finder of fact (*In re Spak*, 188 Ill. 2d 53, 66 (1999)), and our prior case law regarding similar misconduct (*In re Imming*, 131 Ill. 2d 239 (1989)), the findings of the Hearing Board must be affirmed.

I disagree, however, with the majority's decision to reject the recommendations of the Hearing Board, the Review Board, and the Administrator that respondent be disbarred. These recommendations are, of course, purely advisory. This court has the ultimate responsibility for imposing attorney discipline. *In re Chandler*, 161 Ill. 2d

459, 472-73 (1994). In doing so, we strive to achieve predictability and fairness by imposing sanctions consistent with those imposed for similar misconduct. *In re Howard*, 188 Ill. 2d 423, 440 (1999). Nevertheless, we approach each case with the understanding that "our goal is not to punish the attorney but rather to protect the public from incompetent or unscrupulous attorneys, to maintain the integrity of the profession, and to protect the administration of justice from reproach." *Howard*, 188 Ill. 2d at 434. In my opinion, the majority has not given sufficient attention to our responsibility to protect the public from respondent's habitual misconduct or to protect the integrity of the profession.

Although the majority cites cases in which similar misconduct has not resulted in disbarment (208 Ill. 2d at 384), and cases in which repeat offenders have not been disbarred (208 Ill. 2d at 385), I do not find these cases persuasive because this respondent has been disciplined on not just one but two prior occasions. He was suspended for three years in 1993 for conversion and commingling of client funds, failing to maintain complete records of client funds, neglecting cases, hiding assets from the court, and making misrepresentations to the ARDC. He was censured in 1994 for failure to file tax returns for five consecutive years. 208 Ill. 2d at 378. The majority, however, does not give great weight to respondent's prior misconduct as a factor in aggravation. Rather, the majority would require proof of corrupt motives or moral turpitude, rather than mere habitual misconduct, before imposing the severe sanction of disbarment. 208 Ill. 2d at 385.

### Similar Misconduct

The majority notes that in *Imming* a two-year suspension was imposed when the attorney engaged in transactions similar to the loan at issue in Count I. 208 Ill. 2d at 384. The Hearing and Review Boards recom-

mended a two-year suspension for Imming, while the Administrator recommended disbarment. Imming, unlike the respondent in the present case, "had a previously unblemished record for 26 years." *Imming*, 131 Ill. 2d at 261. This court noted that the "degree of punishment imposed in a disciplinary proceeding is based upon an evaluation of the evidence, the respondent's past record, his attitude at the disciplinary proceeding, and the best interests of society." *Imming*, 131 Ill. 2d at 260. Further, although "we endeavor to achieve uniformity in imposing discipline, *** we also consider each case on its own merits." *Imming*, 131 Ill. 2d at 260. In the end, this court concluded that a two-year suspension "would be sufficient deterrence to impress upon respondent and others the absolute necessity of full disclosure in business transactions with clients and the impropriety of overreaching in the attorney-client relationship." *Imming*, 131 Ill. 2d at 261.

The facts relevant to determining the proper sanction in the present case are readily distinguishable from the facts in *Imming*. Respondent does not have an unblemished record; he did not display an attitude of cooperation or remorse at the disciplinary hearing; and he has not been sufficiently deterred from misconduct by a prior three-year suspension.

The majority also points to the two-year suspension imposed in *In re Rosin*, 118 Ill. 2d 365 (1987), for misconduct similar to respondent's. 208 Ill. 2d at 384. In *Rosin*, the record was "replete with both aggravating and mitigating circumstances" (*Rosin*, 118 Ill. 2d at 387), while in the present case, there are aggravating circumstances, but no mitigating circumstances. In mitigation, Rosin received no benefit from his conduct, he did not intentionally defraud his client, and he had no prior history of disciplinary action. Respondent, in contrast, did profit from his misconduct by securing and failing to

repay a loan and by retaining funds that should have been promptly disbursed to a client. Further, he has twice been subjected to professional discipline. In aggravation, the Administrator cited uncharged conduct of Rosin's. *Rosin*, 118 Ill. 2d at 388. In the present case, respondent's failure to file recent tax returns, even after a previous censure for the same conduct, is uncharged conduct that the boards and the Administrator considered an aggravating circumstance.

*In re Joyce*, 133 Ill. 2d 16 (1989), in which a two-year suspension was imposed for commingling and conversion of client funds (208 Ill. 2d at 384), is likewise unpersuasive. In *Joyce*, although the respondent attorney continued to deny any wrongdoing, he had been practicing for almost 20 years with no disciplinary record.

The majority distinguishes two cases cited by the Review Board in its written decision on the basis that, in each case, "certain aggravation existed which is notably absent" in the present case. 208 Ill. 2d at 384. In *In re Stillo*, 68 Ill. 2d 49, 51 (1977), this court ordered disbarment of an attorney who borrowed money from a client and failed to repay it. Later, after the client obtained other representation, Stillo signed a promissory note for the amount borrowed, plus interest. By the time of the disciplinary proceeding, he had paid his obligation in full, including interest. *Stillo*, 68 Ill. 2d at 52. Stillo also settled a claim for another client without her knowledge. The settlement check, "purporting to bear the endorsement" of the client, was deposited in Stillo's bank account. *Stillo*, 68 Ill. 2d at 52. In addition, although Stillo was not charged with giving false testimony, the Hearing Board concluded that he was not truthful in his testimony. *Stillo*, 68 Ill. 2d at 54.

*Stillo* is, thus, virtually on all fours with the present case except that Stillo, unlike respondent, did repay the improper loan. It is difficult to discern what aggravating

factor was present in *Stillo* that is "notably absent" in the present case except, perhaps, for Stillo's accepting a settlement offer without prior authorization from his client. The client, however, did not object to the amount of the settlement. She was wronged by Stillo's conversion of the proceeds. This court concluded that conversion of client funds to one's own use is "an act involving moral turpitude, and, in the absence of mitigating circumstances, \*\*\* is a gross violation of the attorney's oath, calling for the attorney's disbarment." *Stillo*, 68 Ill. 2d at 54.

Later, in *In re Feldman*, 89 Ill. 2d 7 (1982), this court ordered disbarment of an attorney who converted client funds and then compounded his wrongdoing by signing another client's name on checks to obtain funds so that he could cover up the earlier conversion. It is the intentional nature of his misconduct, as evidenced by the attempted cover-up, that the majority apparently finds to be a sufficient aggravating factor to justify disbarment. 208 Ill. 2d at 384. However, in *Feldman*, this court noted that "the offense of conversion is sufficient to justify disbarment" and, further, disbarment has been imposed "in situations involving similar or less flagrant misconduct" than that committed by Feldman. *Feldman*, 89 Ill. 2d at 11. In addition, Feldman argued that a lesser sanction would be appropriate, given that this was the first instance in which he had been charged with professional misconduct. *Feldman*, 89 Ill. 2d at 13. As this court accurately observed, however, "the wrong committed does not constitute an isolated incident. Rather, respondent has manifested a pattern of behavior which clearly tends to bring the legal profession into disrepute." *Feldman*, 89 Ill. 2d at 13. Respondent in the present case has also manifested a pattern of behavior that brings the profession into disrepute.

In my opinion, there is no meaningful distinction to

be made between *Stillo*, *Feldman*, and the present case and the same sanction—disbarment—should be imposed.

Recidivism

While the lack of prior discipline is often seen as a mitigating factor (see *Imming*, 131 Ill. 2d 239; *Joyce*, 133 Ill. 2d 16; *Rosin*, 118 Ill. 2d 365), a history of prior discipline may be viewed as a factor in aggravation (see *Imming*, 131 Ill. 2d at 260 ("respondent's past record" is relevant to determination of discipline to be meted out)). With regard to this aggravating factor, the majority notes the Administrator's reliance on *In re Blank*, 145 Ill. 2d 534 (1991), but does not attempt to distinguish that case. 208 Ill. 2d at 384-85. Instead, the majority relies on *Howard*, 188 Ill. 2d 423. 208 Ill. 2d at 385.

In *Blank*, both the Hearing Board and the Review Board recommended that the respondent be suspended for two years while the respondent argued that a two-year suspension was excessive. *Blank*, 145 Ill. 2d at 554. This court, however, ordered him disbarred because, unlike an attorney suspended for 18 months for similar misconduct, Blank was a recidivist. *Blank*, 145 Ill. 2d at 554, citing *In re Fox*, 122 Ill. 2d 402 (1988). Attorney Blank had not been previously suspended. In fact, his previous discipline consisted only of a censure in 1984 for mishandling of a client's funds. *Blank*, 145 Ill. 2d at 554. Factors supporting disbarment were his recidivism, the gravity of his offenses, and the fact that Blank failed to recognize his improper conduct and attempted to blame his problems on another. *Blank*, 145 Ill. 2d at 555. I agree with the Administrator that *Blank* offers sound support for disbarment in the present case.

In *Howard*, the Hearing Board recommended a two-year suspension for an attorney who made a misrepresentation regarding a past suspension in a petition to practice *pro hac vice* in another state, neglected a criminal appeal, engaged in the practice of law while

under a prior suspension, and failed to promptly return unearned fees. The Review Board adopted the Hearing Board's findings of fact, but reduced the recommended suspension to a period of three months. *Howard*, 188 Ill. 2d at 425. The Administrator filed exceptions, arguing that the misconduct proven in this case, coupled with Howard's history of prior misconduct, demanded a sanction "far in excess of the three months" recommended by the Review Board. This court agreed. *Howard*, 188 Ill. 2d at 440.

Three dissenting justices advocated disbarment of Howard, but the majority rejected disbarment, stating that "where corrupt motives and moral turpitude are not clearly shown, the proper punishment is suspension rather than disbarment." *Howard*, 188 Ill. 2d at 441. With regard to his recidivism, this court noted that the acts underlying the earlier suspension occurred during the same period of time as the neglect of the criminal appeal that formed a substantial part of the current matter. *Howard*, 188 Ill. 2d at 441-42. In addition, the previous suspension was for five months so that a suspension for two years, more than four times the duration of the earlier suspension, would be "sufficiently meaningful" to have the desired effect. *Howard*, 188 Ill. 2d at 442. Finally, there was substantial mitigation based on Howard's "years of dedicated service to the community, to his church, and to a segment of the population that is often overlooked." *Howard*, 188 Ill. 2d at 442.

Respondent in the present case did not demonstrate a substantial degree of mitigation. As the majority notes, the Hearing Board found his testimony regarding community service and *pro bono* representation essentially self-serving and insufficient to warrant substantial consideration. 208 Ill. 2d at 378-79. He expressed no remorse and, indeed, made false statements to the ARDC. In addition, the majority is not imposing a suspension

four times as long as the earlier suspension. The 42-month suspension is a mere six months longer than respondent's three-year suspension, the "until further order" provision notwithstanding.

The present case can also be distinguished from *Howard* on the basis of the timing of the various offenses. The misconduct at issue in count I of the present complaint occurred in 1988, prior to the earlier disciplinary actions. Thus, it is conceivable, I suppose, that the intervening disciplinary actions had such an effect on respondent that he determined never to engage in such conduct again. The facts, however, do not support such an optimistic view. Although respondent solicited the loan from Rzewnicki prior to either of his two earlier disciplinary actions, he did not repay that loan even after his suspension expired and he was again earning sufficient funds to repay his debt. Rzewnicki obtained a default judgment against respondent in January 1999 and, still, respondent made no effort whatsoever to repay the loan. The misconduct at issue in count II of the complaint occurred in 1998, as did the false statements made by respondent to the ARDC, which are the subject of count III.

Previous disciplinary actions had no apparent effect on respondent. Indeed, the Hearing Board noted that he tended to justify and minimize his actions, rather than accept responsibility for them. Respondent, however, told the Board that he had "learned his lesson" from his failure to document his transaction with Purnell. This statement should be viewed with skepticism since respondent did not learn his lesson regarding the maintenance of complete records even after a previous suspension. *In re Timpone*, 157 Ill. 2d 178 (1993).

I find the reasoning of the Review Board persuasive. The timing of the misconduct at issue demonstrates that the earlier suspension had no effect on respondent's

conduct. This three-year suspension ended in 1996 and he was again mishandling client funds as early as 1998. Similarly, although respondent was censured in 1994 for failure to file a timely tax return, he had not filed his 1998 return by the time of his hearing before the Hearing Board. His lack of candor and remorse weigh in favor of a severe sanction. The Review Board, thus, concluded that even a lengthy suspension would not alter respondent's conduct.

### Corrupt Motives or Moral Turpitude

Even when respondent's repeated offenses are taken into consideration, the majority is reluctant to disbar an attorney in the absence of evidence of corrupt motives or moral turpitude. The cases relied upon are *Howard*, 188 Ill. 2d at 441 ("where corrupt motives and moral turpitude are not clearly shown, the proper punishment is suspension rather than disbarment"), and *In re Chapman*, 69 Ill. 2d 494, 501 (1978) (" 'Suspension is a proper punishment "where a corrupt motive and moral turpitude are not clearly shown" ' "), quoting *In re Taylor*, 66 Ill. 2d 567, 571 (1977), quoting *In re Ahern*, 23 Ill. 2d 69, 74 (1961).

On the other hand, there are numerous cases in which this court has equated conversion of client funds with corruption. See, *e.g.*, *In re Himmel*, 125 Ill. 2d 531, 543 (1988) ("It is clear that conversion of client funds is, indeed, conduct involving moral turpitude") (citing *In re Levin*, 118 Ill. 2d 77, 88 (1987), and *Stillo*, 68 Ill. 2d at 54).

Although respondent's conduct is certainly less blameworthy than that of an attorney who sets out to deliberately defraud his clients, it is not the result of mere inadvertence, or a single instance of yielding to temptation, or inexperience, or personal pressures related to family matters or to health. He has demonstrated for more than a decade that he cannot be trusted to conform

his conduct to the Rules of Professional Conduct. His recidivism is the evidence of corruption.

### Conclusion

Disbarment is a severe penalty that should be used only in cases of serious misconduct. *In re Yamaguchi*, 118 Ill. 2d 417, 428-29 (1987) (declining to disbar attorney who aided another in the unauthorized practice of law and imposing six-month suspension recommended by Review Board where respondent had no history of professional discipline, did not profit or attempt to profit from his misconduct, and neither harmed nor intended to harm anyone). Respondent's pattern of misconduct is serious, repeated, and remorseless. It is this court's duty to protect the public from such conduct. Respondent should be disbarred.

JUSTICE THOMAS joins in this dissent.